694 P.2d 181

**TRANSAMERICA INSURANCE GROUP, Plaintiff-Appellee,**

v.

**Lynne Edward MEERE and Carol Meere, husband and wife, Defendants-Appellants.**

**No. 17043–PR.**

Supreme Court of Arizona,
En Banc.

Dec. 18, 1984.

Lewis & Roca, by D.W. Grainger, Paul G. Ulrich, Brian Goodwin, Suzanne P. Clarke, Phoenix, for plaintiff-appellee.

McGroder, Pearlstein, Peppler & Tryon by Lynn M. Pearlstein, Brent E. Corwin, Phoenix, for defendants-appellants.

FELDMAN, Justice.

Lynne Edward Meere (defendant) petitions this court for review of the majority decision of the court of appeals (*Transamerica Insurance Group v. Meere*, 143 Ariz. 433, 694 P.2d 263 (1983)), which affirmed a summary judgment in favor of Transamerica. The trial court had determined that Transamerica was not required to defend Meere in a civil action and that the homeowner's policy issued by Transamerica to Meere did not potentially provide liability coverage for Meere. We have jurisdiction. Ariz. Const., art. 6, § 5(3); A.R.S. § 12–120.24; Rule 23, Ariz.R.Civ. App.P., 17A A.R.S. We granted review in this case and in *Fire Insurance Exchange v. Berray*, 143 Ariz. 429, 694 P.2d 259 (1983) to settle a conflict in the court of appeals' decisions (*see* Rule 23(c)(4)) concerning the impact of the intentional injury exclusion on an insurer's duty to defend an action brought by a third party for assault when the insured has raised the affirmative claim of the privilege of self-defense.

## FACTS

In an appeal from summary judgment the evidence is viewed in the light most favorable to the party against whom summary judgment was taken. *Gulf Insurance Co. v. Grisham*, 126 Ariz. 123, 124, 613 P.2d 283, 284 (1980). Viewed in that light, the facts are as follows.

On March 27, 1980, at about 12:30 a.m., Meere and a friend, Leon Ivey, were leaving Lindy's, a bar in Florence, Arizona. Outside Lindy's, Meere and Ivey were confronted by several off-duty employees of the Arizona State Prison. Meere alleges that he was quite apprehensive because he had been informed by a captain at Arizona State Prison that a rumor was circulating among the guards that Ivey and Meere, both ex-police officers, were undercover investigators of narcotics flow into the prison. One of the guards, Dennis Pruitt, approached Meere. Meere and Pruitt exchanged words. Pruitt then struck Meere, knocking him to the ground; Meere put up his hands, said "I don't want to fight," and was struck again by Pruitt. The two then exchanged blows. The fight ended when Meere knocked Pruitt to the ground and kicked Pruitt as he attempted to get up and come at Meere again. Pruitt lost partial use of an eye as a result of this fight.

Pruitt brought a tort action against Meere. His complaint reads, in part:

### III

That on or about March 27, 1980, at approximately 12:30 a.m., Dennis R. Pruitt was struck in the face, his eye and other areas of his body by Lynne Edward Meere . . . .

\* \* \* \* \* \*

### VIII

The aforesaid acts of defendants were grossly negligent and outrageous acts done with reckless disregard of the rights of plaintiffs and as a result thereof, said defendants should be made to respond in punitive damages . . . .

Transamerica insures Meere against tort liability. It brought this declaratory judg-

ment action against Meere and Pruitt to establish that it had no duty to defend or indemnify Meere against Pruitt's tort action. Its complaint alleges that

> ... defendant Lynne .Edward Meere intentionally struck with his hands and feet the defendant Dennis Pruitt in the face and about the body ....

In his answer to the declaratory judgment action Meere denied that allegation. When asked "upon what facts do you base your denial of our allegation that you intentionally struck Mr. Pruitt," Meere responded as follows:

> Well, from the statement that you're making right there, I would say that it would be the fact that I intentionally did it. As far as I'm concerned, I was defending myself. It was a self-defense situation. And I was warding off an attack. And I was fearful of [for] my life.

Meere deposition, p. 16. Meere also stated "I did not intentionally strike him. I mean, it was self-defense." Meere stated that he was also fearful because "the fight came to me. I didn't go to it." Meere deposition, p. 20. He had no intention of seriously injuring Pruitt.

The thrust of Meere's deposition testimony is that he used only the force he thought was necessary to repulse a persistent attack by Pruitt while he and Ivey were partially surrounded by several aggressive off-duty prison guards, one of whom they believed was armed with a gun. It is uncontested, however, that Meere intended to strike the blow that injured Pruitt.

At the time of the fight, the Transamerica homeowner's policy insuring Meere contained the following exclusion:

> Personal liability coverage does not apply to bodily injury, personal injury, or property damage, (A) which is expected or intended by the insured ....

Transamerica relied on this exclusion in seeking the declaratory judgment of noncoverage. The trial court granted summary judgment on this basis and the court of appeals affirmed. We reverse the judg-

ment of the trial court and vacate the opinion of the court of appeals.

## I—CHARACTERIZATION OF ISSUE

The basic question is whether the insured's subjective intent to cause or not to cause injury is relevant where the act producing injury was intentional but committed in self-defense. Is the insured bound by the natural and probable consequences of his immediate act of striking the blow, even though he may establish that he had no underlying or basic intent to injure the victim? The majority of the court of appeals held:

> Meere's statements that he did not intend to seriously injure Pruitt or cause the loss of his eyesight, though relevant to his subjective intent or motive, are immaterial to determine whether the exclusion applies.... We therefore find that the bodily injury to Pruitt was 'intended' by Meere within the meaning of the policy exclusion.

*Transamerica Insurance Group v. Meere,* 143 Ariz. at 435, 694 P.2d at 265. Division II of the court of appeals had previously reached a similar conclusion in *Lockhart v. Allstate Insurance Co.,* 119 Ariz. 150, 579 P.2d 1120 (1978). A majority of a different department of Division I reached the opposite conclusion in *Fire Insurance Exchange v. Berray, supra,* holding that an act committed in self-defense was not within the intentional exclusion from liability coverage.

Those who espouse the view that an intentional act committed in self-defense falls within the exclusion base their position on *Steinmetz v. National American Insurance Co.,* 121 Ariz. 268, 589 P.2d 911 (App.1978) and *Clark v. Allstate Insurance Co.,* 22 Ariz.App. 601, 529 P.2d 1195 (1975). Both cases hold that where the insured intentionally commits an act calculated to cause some injury, he will not be permitted to deny an intent to injure nor be allowed to evade the scope of the exclusionary clause by pleading that the resultant injury "is different either in character or magnitude from the injury that was intend-

ed." *Steinmetz*, 121 Ariz. at 271, 589 P.2d at 914 (quoting *Butler v. Behaeghe*, 37 Colo.App. 282, 287, 548 P.2d 934, 938 (1976)). However, neither *Steinmetz* nor *Clark* was a self-defense case. In both cases it was assumed or presumed from the performance of the act that the insured intended to inflict an injury. That assumption is proper in both *Steinmetz* and *Clark* because the insured, acting without justification or privilege, committed an act bound to cause *some* injury. It is, therefore, of no consequence that he may have intended a different or lesser injury. The exclusion applies whenever the insured intends to injure.

But the issue before us requires a definition of "intent"; does a person acting in self-defense, or with other justification, really "intend" to injure even though he acts in a manner quite likely or even certain to cause some injury? Where, unlike *Steinmetz* and *Clark*, there is some justification or privilege connected with the insured's intentional act, do we deal with basic intent or simply with immediate intent—the natural consequences of the act?

We find authority from other states in conflict. *See Annot.*, 2 ALR 3d 1238 (1965). The annotation summarizes the divergence of opinion as follows:

> The courts have generally held that injury or damage is "caused intentionally" within the meaning of an "intentional injury exclusion clause" [only] if the insured has acted with the specific intent to cause harm to a third party, with the result that the insurer will not be relieved of its obligations ... unless the insured has acted with such specific intent. Under this view, it is not sufficient that the insured's intentional, albeit wrongful, act has resulted in unintended harm to a third person; it is the harm itself that must be intended before the exclusion will apply. There is, however, some authority for the proposition that such a clause will operate to relieve a liability insurer of its duty to indemnify an insured whose intentional act has caused harm to a third person where the

nature or character of the act is such that an intent to cause harm is thereby inferred as a matter of law.

*Id.* at 1241 (footnote omitted). *See also Allstate Insurance Co. v. Steinemer*, 723 F.2d 873, 875–76 n. 2 (11th Cir.1984).

■ *Steinmetz* and *Clark* seem to fit within what the annotation scope note indicates to be the minority view. Some of the cases on the supposed majority and minority sides of the question resolve the issue on the fictional basis of the "intent of the parties." *See, e.g., Patrons-Oxford Mutual Insurance Co. v. Dodge*, 426 A.2d 888 (Me.1981) (holding the clause ambiguous and to be construed against the insurer because it fails to specify whether the intent referred to is the objective intent which accompanied the immediate act of striking the blow or the "actual subjective intention" which motivated the insured's conduct). Of course, a finding of ambiguity is the easy way out since it permits the court to create its own version of the contract and to find, or fail to find, ambiguity in order to justify an almost predetermined result. This is an approach which we have abandoned. *See Darner Motor Sales v. Universal Underwriters Insurance Co.*, 140 Ariz. 383, 682 P.2d 388 (1984). We believe the proper methodology is to determine the meaning of the clause—where it is susceptible to different constructions—by examining the purpose of the exclusion in question, the public policy considerations involved and the transaction as a whole. We proceed, therefore, to analyze these factors.

## II—PUBLIC POLICY, BUSINESS POLICY AND EXCLUSIONS FOR INTENTIONAL INJURY IN INSURANCE POLICIES

■ Insurance policies are purchased "as protection against calamity." *Noble v. National American Life Insurance Company*, 128 Ariz. 188, 189, 624 P.2d 866, 867 (1981). The "business" principle here is that an insured seeks the safety of insurance against risks that are outside his control and the insurer agrees to cover for a

premium based on actuarial calculations of the random occurrence (risk) of such events in a given population. This principle is the basis for the "intentional exclusion" and, according to Appleman, is central to the purposes of insurance:

> The intentional exclusion is necessary to the insurer to enable it to set rates and supply coverage only if losses under policies are uncertain from the standpoint of any single policyholder, and if a single insured is allowed through intentional or reckless acts to *consciously* control risks covered by policy, *the central concept of insurance is violated.*

7A Appleman, *Insurance Law and Practice*, § 4492.01 at 21 (1979) (emphasis supplied) (citing *Bituminous Casualty Corporation v. Bartlett*, 307 Minn. 72, 78, 240 N.W.2d 310, 313 (1976)). Thus, as a matter of contract, it seems proper to conclude that the clause is designed by the insurer to exclude indemnification when the insured suffers a loss resulting from the exercise of his own volition; the exclusion applies because the insured is assumed to have controlled the risk.

From a non-contractual standpoint, the cases have taken the position that the clause also articulates a public policy which forbids contracts indemnifying a person against loss resulting from his own willful wrongdoing. *Globe American Casualty Co. v. Lyons*, 131 Ariz. 337, 641 P.2d 251 (App.1981); *Armstrong v. Security Insurance Group.*, 292 Ala. 27, 288 So.2d 134 (1973); *Gray v. Zurich Insurance Co.*, 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168 (1966); *Ambassador Insurance Co. v. Montes*, 147 N.J.Super 286, 371 A.2d 292 (1977); 7A *Appleman, supra*, § 4501.09 (supplement 1982). These principles of contractual "intent" and public policy coincide; the provision is designed to prevent an insured from acting wrongfully with the security of knowing that his insurance company will "pay the piper" for the damages. That design is not served by interpreting the provision to exclude coverage in self-defense situations where the insured is not acting by conscious design but is attempting to avoid a "calamity"

which has befallen him. *See Nielsen v. St. Paul Companies*, 283 Or. 277, 281, 583 P.2d 545, 547 (1978) (holding that the acts, though intentional, "must have been committed for the purpose of inflicting the injury and harm before either a policy provision excluding intentional harm applies or the public policy against insurability attaches").

Of course, one may strike a blow in self-defense, with an intent to injure as a tactic of defense. We turn, therefore, to examine the question of whether, in such a context, the relevant intent is that which accompanies the immediate act or the purpose which underlies the insured's basic conduct.

## A. THE CONCEPT OF SELF–DEFENSE

Examination of self-defense as a concept of tort law is helpful in determining how to interpret an insurance policy which indemnifies against tort damages and contains an exclusionary clause for injuries "expected or intended" by the insured. In discussing the evolution of the concept of fault in tort law, Prosser offers some important historical insights.

> Originally the man who hurt another by pure accident, or in self-defense, was required to make good the damage inflicted. "In all civil acts," it was said, "the law doth not so much regard the intent of the actor, as the loss and damage of the party suffering." There was ... a rule, undoubtedly supported by the general feeling in the community, that "he who breaks must pay."

Prosser, *Handbook on the Law of Torts* § 75 at 492 (4th ed. 1971) (footnotes omitted). As social policy and community sentiment, much of this may still be true today, but modern tort law does seek to characterize the behavior of the actor as either blameworthy or morally faultless. In tort law, therefore, there is usually a need to distinguish between negligence and intent. This is a matter of "line drawing."

[T]he *mere knowledge and appreciation of a risk,* short of substantial certainty, *is not the equivalent of intent. The defendant who acts in the belief or consciousness that he is causing an appreciable risk of harm to another may be negligent,* and if the risk is great his conduct may be characterized as reckless or wanton, but it is not classed as an intentional wrong. In such cases the distinction between intent and negligence obviously is a matter of degree. Apparently the line has been drawn by the courts at the point where the known danger ceases to be only a foreseeable risk which a reasonable man would avoid, and becomes a substantial certainty.

Prosser, *supra,* § 8 at 32 (emphasis supplied) (substantially quoted in *Gray v. Zurich, supra); see also Restatement (Second) of Torts,* § 8A, especially comment (b).

■ This understanding of "intent" and "negligence" has particular relevance for understanding the "privilege" of self-defense in tort law. One may use only reasonable force (which, of course, might injure the aggressor) to prevent harm to his person. Prosser, *supra.,* § 19 at 108.

The defendant is not privileged to inflict a beating which goes beyond the real or apparent necessities of his own defense. If he does, he is committing *a tort as to the excessive force,* and it is entirely possible that each party may have an action against the other.

*Id.* at 109–10 (emphasis supplied). The tort of "excessive force" in the course of self-defense is apparently "nonintentional tortious conduct," to use the phrase of the California court in *Gray v. Zurich, supra.* By using this term the California court seems to be balancing the scales to fix minimal blame on one who overreacts in self-defense because it implicitly recognizes that the mental state induced in one repulsing an attack is different from that of the attacker (who commits an "intentional tort"). *Id.* Thus, tort law recognizes an inherent distinction in the quality of "intent." The attacker commits an intentional tort; the defender, though he strikes intentionally, may not act with wrongful intent. This distinction is a recognition in tort law that the basic or underlying intent of the actor is more important in characterizing the conduct than the immediate intent accompanying the act which produced the injury.

## B—ANALYSIS OF CASE LAW

Meere claimed in his deposition that, while he "intentionally" struck Pruitt, his purpose was only to defend himself. Meere desired no harm to Pruitt but sought only to prevent harm to himself. As we have noted, in such a case the word "intent" operates at different levels and has different connotations. However, Transamerica (citing *Clark v. Allstate Insurance Company, supra*) argues that Meere's subjective intent is of no moment because one is held to have intended the natural and probable consequences of his act, whatever they are and regardless of actual subjective feeling. We have recognized that

[A]n act may be so certain to cause a particular injury that the intent to cause the harm is inferred as a matter of law and the subjective intent of the actor is immaterial.

*Farmers Insurance Company of Arizona v. Vagnozzi,* 138 Ariz. 443, 449, 675 P.2d 703, 709 (1983).

This statement in *Vagnozzi* is based on the holdings in *Steinmetz v. National American Insurance Co., supra* and *Clark v. Allstate Insurance Co., supra.* Both of these cases, however, are easily distinguished. In *Clark,* for instance, the intentional blow was entirely unprovoked. Clark came to his fight; Meere's fight "came to him." Clark may be presumed to have had the detached reflection which is not expected of a person faced with an uplifted fist or with an unprovoked attack. *Cf. Brown v. United States,* 256 U.S. 335, 343, 41 S.Ct. 501, 502, 65 L.Ed. 961 (1921). Under the *Steinmetz—Clark* rule the insured is conclusively presumed to have intended to injure when he commits an act

calculated to cause some injury. However, we also recognized in *Vagnozzi* that the *Steinmetz—Clark* rule is not applicable in all cases.

> The presumption that a person intends the ordinary consequences of his voluntary actions, used in determining responsibility for the consequences of voluntary acts, has no application to the interpretation of terms used in insurance contracts.
>
> \* \* \* \* \* \*
>
> ... [the insured] stated in his deposition that he intended to hit Vagnozzi but also stated he did so in order to knock Vagnozzi out of the way and pursue the ball. The policy definition of "accident" as an event resulting in injury [neither] expected or intended by the insured makes the subjective intent of the insured a question of fact to be determined after listening to the testimony. The two interpretations which can be drawn from [the insured's] testimony create enough question as to his intent that the *Steinmetz* exception does not apply. For purposes of determining that a resulting injury was so certain to occur that the actor intended the harm as a matter of a law, we find that intentionally throwing an elbow in an attempt to get the ball during a heated basketball game is distinguishable from deliberately punching a person in the face. Whether the injury was the intended result of [the insured's] act or whether the act constituted negligent or grossly reckless conduct is a matter upon which reasonable minds can differ.

*Vagnozzi*, 138 Ariz. at 449–50, 675 P.2d at 709–10.

 We believe the blow struck in self-defense is analogous to that struck in an attempt to get to the basketball. In both cases the insured must be aware that his act possibly or even probably may cause injury. In neither case does the insured necessarily have a primary desire to injure the victim. The unprovoked blow, such as that struck in *Steinmetz* or *Clark*, however, is different. The *unprovoked* (unprivileged) act of striking someone in the face with a fist is an unequivocal manifestation of a basic purpose or desire to cause some injury and the law will not allow the insured to evade the applicability of the exclusions by protestations of innocence. The blow was volitional, the event was in the control of the insured, and no accident or calamity beyond his control occurred. The law presumes he intended the result which was the natural consequence of his intentional act. In summary, in *Clark* and *Steinmetz*, the insured controlled the loss and thus fell within the category of risks which both the insurance contract and public policy consider uninsurable. In the case at bench, however, there is evidence from which the finder of fact may decide that Meere was confronted with a risk over which he had little control. His blow may not have been the result of a cognitive process, and his action may not have been "voluntary." Although his act was intentional, and its natural consequence was to cause injury, his basic desire or purpose may not have been to injure. The *Steinmetz-Clark* presumption does not apply.

Substantial authority supports such an analysis. The Nebraska Supreme Court, after analyzing a number of cases concluded:

> The cases, as evidenced by those already cited, point out that when one acts in self-defense the actor is not generally acting for the purpose of intending any injury to another but, rather, is acting for the purpose of attempting to prevent injury to himself. It can easily be said that such act, though resulting in bodily injury to another, was neither expected nor intended within the terms of the policy .... An injury resulting from an act committed by an insured in self-defense is not, as a matter of law, an expected or intended act ...

*Allstate Insurance Company v. Novak*, 210 Neb. 184, 192–93, 313 N.W.2d 636, 640–41 (1981); *see also Patrons-Oxford Mutual Insurance Co. v..Dodge, supra; Farmers Insurance Exchange v. Sipple*, 255 N.W.2d 373 (Minn.1977); *Hanover Insur-*

*ance Group v. Cameron,* 122 N.J. Super. 51, 298 A.2d 715 (1973).

■ Analogous situations exist in which inquiry into the insured's basic subjective intent has not been limited to cases of sports injury, where some degree of force is to be expected, or to cases of self-defense. It extends to other situations in which the insured acted intentionally but did not control the risk. For instance, where the insured commits an intentional act causing injury but lacks the mental capacity to act "rationally," the clause does not apply because its application would be "inconsistent with a primary purpose for incorporating intentional injury exclusions ..., *i.e.,* to preclude individuals from benefiting financially when they deliberately cause injury." *Globe American Casualty Co. v. Lyons,* 131 Ariz. at 339–40, 641 P.2d at 253–54. Where the insured intentionally injures the victim because of mistaken identity, the clause does not apply. *Curtain v. Aldrich,* 589 S.W.2d 61 (Mo.App. 1979) (the insured beat a "burglar" over the head with a crowbar, only to find that the "burglar" was his brother-in-law; the court held that if the jury found a case of mistaken identity and further found that there was no specific intent to injure the brother-in-law, the exclusion would not be applicable even though the insured intentionally struck blows intending to injure a burglar).

■ Case authority to the contrary exists. *See, e.g., Home Insurance Company v. Neilsen,* 165 Ind.App. 445, 450, 332 N.E.2d 240 (1975). We believe, however, that when the factors involving public policy and the purpose of the contractual exclusion are considered, the proper interpretation of the clause in question is that it excludes indemnification or coverage when the insured intentionally acts *wrongfully* with a purpose to injure. When he acts wrongfully, he commits an intentional tort by performing an act designed to inflict injury. He will not be allowed under such circumstances to deny a basic intent demonstrated by his acts. *Steinmetz, supra; Clark, supra.* Nor will he be allowed to

escape from the exclusionary clause by claiming that he did not intend the precise injury—in character or magnitude—that in fact occurred. However, if the insured can show facts which might establish that he acted with privilege (as in a sports injury case, for instance) or under claim of right recognized by law (as in self-defense), he will be permitted to explain his subjective intent, and it will be for the fact finder to determine whether he had an underlying purpose to injure. The basic question is whether the conduct which led to the blow was intentionally wrongful from the viewpoint of the law of torts. Such an interpretation comports with the intent of the exclusionary clause in a policy which insures against tort damages; it is consistent both with the public policy which forbids indemnification against wrongful acts and with the better reasoned authority.

"[I]ntent" in an action for assault requires merely that the defendant intend to do the wrongful act. *See* W. Prosser, *The Law of Torts* (3d ed. 1964) § 8 at 31. In order to constitute "intent" in an intentional acts exclusion or in the definition of occurrence, however, the insured must desire to harm the plaintiff. 11 Couch on Insurance 2d § 44:289 (Rev. ed 1982).

Berg, "Losing Control of the Defense—The Insured's Right to Select His Own Counsel," 26 *For the Defense* (No. 7) 10, 16 (July 1984) (Defense Research Institute).

■ Thus, if the trier of fact determines that Meere was the aggressor and acted wrongfully by striking Pruitt without legal justification, the basic intent to injure will be presumed and the exclusion will apply. *Steinmetz, supra.* If the finder of fact determines that Meere's conduct was not intentionally wrongful, but that he acted instead in self-defense with no basic purpose to injure, the exclusion will not apply. Of course, in such circumstances one would expect that the judgment in the tort case will be in Meere's favor, and Transamerica's purse will be spared. If the jury finds that Meere acted in self-defense with no basic desire or intent to harm

Pruitt, but negligently used force greater than necessary in self-defense, Meere may be liable for damages to Pruitt. In such an event, the true situation is one of negligence. *Gray v. Zurich, supra.* It is the only real exposure for Transamerica and it is, we believe, within the coverage of the policy and not within the exclusion.

■ Since the complaint alleges facts which may be within the policy coverage, the insurer is obligated to assume the defense. *Kepner v. Western Fire Insurance Co.,* 109 Ariz. 329, 331, 509 P.2d 222, 224 (1973). Of course, further discovery may reveal uncontested facts which obviate the self-defense theory which Meere has raised. If these facts plainly take the case outside policy coverage, there is no duty to defend. *Id.; Granite State Insurance Corp. v. Mountain States Telephone and Telegraph Co.,* 117 Ariz. 432, 573 P.2d 506 (App.1977).

We hold, therefore, that the court erred in granting summary judgment to Transamerica. The judgment of the trial court is reversed, the opinion of the court of appeals is vacated, and the case is remanded for further proceedings not inconsistent with this opinion.

GORDON, V.C.J., and HAYS and CAMERON, JJ., concur.

HOLOHAN, Chief Justice, dissenting.

The resolution of this case by the majority is actually a decision by the court based on policy to distribute the consequences of the loss on an insurance company. I come to this conclusion because a reading of the majority opinion shows that it is not based on logic. The decisions from other jurisdictions collected in 2 A.L.R.3d 1238 *et seq.* present a variety of approaches to the problem. The majority of this court reject the decisions which find the insurance exclusion in this case ambiguous. 143 Ariz. at 355, 694 P.2d at 185.

The issue of whether self-defense was excluded from coverage under an insurance policy containing language similar to that in this case was decided in *Lockhart v.*

*Allstate Ins. Co.,* 119 Ariz. 150, 579 P.2d 1120 (App.1978). Review was denied by this court.

The exclusion in *Lockhart* read: "to bodily injury or property damage which is either expected or intended from the standpoint of the Insured." *Id.,* 119 Ariz. at 151, 579 P.2d at 1121. Construing the language of the exclusion the court stated:

> The insurance policy excludes coverage for an intentional act of the insured which was intended to cause injury or which could be expected to cause injury. The question of self-defense presents an issue of motive or justification for an intentionally caused harm but does nothing to avoid the inference of intent to harm that necessarily follows Lockhart's deliberate shooting at Owes.

*Id.,* 119 Ariz. at 152, 579 P.2d at 1122 (citation omitted). This court, however, distinguishes the intent involved in an intentional act and that in self-defense, and concludes that the intent of the actor is more important in characterizing the conduct than the immediate intent accompanying the act which produces the injury. 143 Ariz. at 357, 694 P.2d at 187. While this may be an interesting philosophic conclusion, it does nothing to change the plain meaning of the policy exclusion. At one time this court stated that an insurance company had the right to limit its liability and to impose conditions and restrictions upon its contractual obligations not inconsistent with public policy. *Kepner v. Western Fire Insurance Company,* 109 Ariz. 329, 330, 509 P.2d 222, 223 (1973). That position is effectively overruled with today's decision.

Not being satisfied with changing self-defense into a non-intentional act, the majority concludes that the exclusion does not apply even if the defense of self-defense is not available because greater force was used than necessary. The "greater force than allowed by self-defense" has now become negligence.

What the court has done in this case is to mandate insurance coverage whenever an insured contends his intentional acts were

done in self-defense; further, the insurance company must now defend and pay the judgment up to policy limits even if the insured exceeds the limits of legitimate self-defense.

The decision by the majority is neither supported by logic nor good policy, and I dissent.