## STATE FARM FIRE AND CASUALTY COMPANY, Appellant

v.

## James DeCOSTER and Beverly Diane Rydman, Appellees.

Superior Court of Pennsylvania.

Argued Oct. 23, 2012.

Filed May 17, 2013.

---

**42**

David J. Rosenberg, Pittsburgh, for appellant.

Thomas E. Flower, Carlisle, for Rydmann, appellee.

BEFORE: SHOGAN, LAZARUS and OTT, JJ.

OPINION BY SHOGAN, J.:

In this declaratory judgment action, State Farm Fire and Casualty Company ("State Farm") appeals from the trial court's April 9, 2012 order denying State Farm's motion for summary judgment and granting Appellees', James DeCoster ("DeCoster") and Beverly Diane Rydman's ("Rydman"), motions for summary judgment with respect to State Farm's duty to defend and indemnify DeCoster in a third-party action initiated by Rydman. On appeal, we are asked to decide, *inter alia,* whether the intentional injury exclusion of a liability policy applies when an intoxicated homeowner intentionally injures a guest who he mistakes as an intruder. We hold that the application of the intentional injury exclusion of a liability policy, such as the one at issue here, depends on whether the insured's conduct was intentionally wrongful under tort law. Under the specific facts of this case, we conclude that State Farm currently has a duty to defend but that genuine issues of material fact exist as to whether the insured home-

owner's conduct was intentionally wrongful under applicable tort law. Thus, the court's decision as to indemnification is premature at this juncture. Accordingly, we affirm in part and reverse in part.

The trial court set forth the relevant factual and procedural history as follows:

The facts were stipulated by the parties and are set forth at length in the Stipulation of Facts, filed of record on August 25, 2011. Those material to the question presented in the instant Motions are in substance as follows:

On August 14, 2008, Defendant Diane Rydman and Defendant James DeCoster had been together at a bar known as Fast Eddie's on High Street in Carlisle, Pennsylvania. Rydman and DeCoster had lived within blocks of the bar where they had met each other, and had slept together once before. After leaving the bar, the two went to DeCoster's home at 161 West Louther Street and continued to drink alcohol. In the early morning hours, and while DeCoster was going to the bathroom, Rydman went outside DeCoster's home to smoke a cigarette. After approximately ten minutes, Rydman came back into the home and, upon her re-entry, DeCoster mistakenly believed that an intruder had broken into his home. DeCoster grabbed a handgun, and, when he saw Rydman, he mistook her for a small male intruder. At the time, DeCoster was not wearing his eyeglasses, and he began to chase after Rydman believing he was chasing an intruder. DeCoster pointed a handgun and shot Rydman in the abdomen. Of DeCoster's intent as he shot Rydman, the Stipulation of Facts provides as follows: "Despite being intoxicated, DeCoster intended to shoot who he believed to be a small male intruder. Mr. DeCoster pulled the trigger on purpose intending to shoot who he believed to be

a small male intruder. In fact, the victim was Diane Rydman." (Stipulation of Facts, ¶ (i)). DeCoster called the police, and over the telephone he stated, "You are damn right I shot him. Hurry up and get over here." (Stipulation of Facts, ¶ (n)). Upon their arrival, DeCoster stated to the police, "Over here, I shot him. He is in here." (Stipulation of Facts, ¶ (o)). DeCoster was intoxicated and had a blood alcohol of 0.187 as tested by the police shortly after the shooting.

DeCoster was charged and found guilty of the offense of aggravated assault by intentionally or knowingly causing to attempt [sic] injury to another with a deadly weapon. The conviction was overturned on appeal, and he subsequently accepted a plea in lieu of retrial. DeCoster pled guilty to aggravated assault, and was sentenced to time served.

At the time of the shooting, DeCoster was insured under a homeowners insurance policy issued by Plaintiff State Farm. The insurance policy provided, in pertinent part, as follows:

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury or property damage** to which this coverage applies, caused by an **occurrence,** we will

1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and
2. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the **occurrence,** equals our limit of liability.

(Complaint, Ex. A, Homeowners Insurance Policy) (emphasis original).

Furthermore, the policy of insurance defined the term "occurrence" as follows:

when used in Section II of this policy, means an accident, including exposure to conditions, which results in:

a. **bodily injury; or**

b. **property damage;**

during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one **occurrence.**

(Complaint, Ex. A, Homeowners Insurance Policy) (emphasis original).

The policy also contained the following relevant exclusionary language:

Coverage L and Coverage M do not apply to:

a. **bodily injury or property damage:**

(1) which is either expected or intended by the **insured; or**

(2) which is the result of willful and malicious acts of the **insured.**

(Complaint, Ex. A, Homeowners Insurance Policy) (emphasis original).

Rydman filed an action against DeCoster in the Court of Common Pleas of Cumberland County at Docket Number 2010–4862 seeking damages for the harm caused as a result of the shooting. The complaint does not set forth any specific counts; instead, Rydman's complaint describes the incident and contains substantially the same facts as the above-described Stipulation of Facts. The allegations relevant to the instant Motions are, in pertinent part, as follows:

19. Defendant, who was carrying a handgun, rounded the foot of the stairs and ran from the hallway and

then through the living room toward the dining room, where he encountered Plaintiff, whom he mistook for an intruder.

20. Alarmed, [Plaintiff] instinctively ran the in [sic] other direction, and Defendant chased her in a circuit through the hallway, the living room and the dining room, until Plaintiff took a wrong turn and Defendant cornered her in the hallway.

22. Plaintiff also noticed, as Defendant approached her, that his eyes were extremely wide open, as if in fear or excitement.

23. Defendant then pointed the handgun at Plaintiff and shot her in the abdomen.

26. After the police responded to the call, Defendant, still unaware that he had shot Plaintiff, insisted to the police that he had shot a male intruder.

27. In his drunken condition, to grab his handgun and run downstairs to confront a supposed intruder, without putting on his eyeglasses and without taking time to identify the person in his hallway before shooting, was a gross deviation from the standard of conduct that a reasonable person would observe in his situation.

28. Defendant's grossly negligent or reckless shooting of Plaintiff in the abdomen caused Plaintiff such grievous harm that she had to be transported by helicopter for emergency treatment in the trauma center at Hershey Medical Center.

(Complaint, Ex. B, Rydman Complaint).

DeCoster then filed a claim with State Farm requesting that State Farm defend and indemnify DeCoster in the Rydman action. State Farm subsequently filed the underlying declaratory judgment action, requesting this court to declare that it has no duty to defend or indemnify DeCoster for any and all allegations arising out of facts stated in a Rydman complaint. State Farm has filed the instant Motion for Summary Judgment, maintaining that the above-quoted language of the insurance policy excludes coverage. Rydman and DeCoster, as Co–Defendants herein, have filed cross Motions for Summary Judgment, asserting that, because DeCoster did not intend to shoot *Rydman*, the exclusion does not apply and State Farm is obligated to defend DeCoster in the Rydman action.

Trial Court Opinion, 3/14/12, at 1–5 (emphasis in original).

In an order accompanying the trial court's opinion, the court denied State Farm's motion for summary judgment and granted DeCoster's and Rydman's cross-motions for summary judgment, ordering State Farm to defend and indemnify DeCoster in the third-party action filed against him by Rydman. Order, 3/14/12. State Farm then filed this appeal.

State Farm presents the following issues for this Court's consideration:

I. Whether the trial court erred by finding that the act of shooting Ms. Rydman, by Mr. DeCoster, was as an occurrence (i.e., an accident) as defined within the subject homeowners' policy, such as to trigger State Farm's duty to defend and indemnify Mr. DeCoster.

II. Whether the trial court erred by finding that, although Mr. DeCoster's conduct was intentional, State Farm was required to defend and indemnify its insured, Mr. DeCoster.

III. Whether the trial court erred in ruling that, although Mr. DeCoster intentionally shot a person, because he neither expected nor intended to shoot Ms. Rydman, State Farm was required to defend and indemnify Mr. DeCoster

in the action filed against him by Ms. Rydman.

IV. Whether the trial court erred by finding that State Farm owed a duty to defend and indemnify its insured, Mr. DeCoster.

State Farm's Brief at 5 [1] (issues renumbered for ease of disposition).

We begin our analysis by noting the applicable scope and standard of review:

We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

*QBE Ins. Corp. v. M & S Landis Corp.*, 915 A.2d 1222, 1225 (Pa.Super.2007), *appeal denied*, 598 Pa. 769, 956 A.2d 436 (2008) (quoting *Pappas v. Asbel*, 564 Pa. 407, 418, 768 A.2d 1089, 1095 (2001)).

This court has summarized the law regarding an insurer's duty to defend and indemnify as follows:

The interpretation of an insurance contract regarding the existence or non-existence of coverage is generally performed by the court. Insurance policies are contracts, and the rules of contract interpretation provide that the mutual intention of the parties at the time they formed the contract governs its interpretation. Such intent is to be inferred from the written provisions of the contract. If doubt or ambiguity exists it should be resolved in insured's favor. An insurer's duty to defend and indemnify the insured may be resolved via declaratory judgment actions. In such actions, the allegations raised in the underlying complaint alone fix the insurer's duty to defend. As this Court has summarized: The duty to defend is a distinct obligation, separate and apart from the insurer's duty to provide coverage.

Moreover, the insurer agrees to defend the insured against any suit arising under the policy even if such suit is groundless, false, or fraudulent. Since the insurer agrees to relieve the insured of the burden of defending even those suits which have no basis in fact, the obligation to defend arises whenever the complaint filed by the injured party may potentially come within the coverage of the policy.

Pennsylvania recognizes that a duty to defend is broader than the duty to indemnify. Accordingly, even if there are multiple causes of action and one would potentially constitute a claim within the scope of the policy's coverage, the insurer would have a duty to defend until it could confine the claim to a recovery excluded from the policy. The question of whether a claim against an insured is potentially covered is answered by com-

---

1. We observe that while State Farm purports to raise four issues on appeal, it failed to divide the argument section into as many parts as there are questions to be argued. Pa.R.A.P. 2119(a). After a complete review of State Farm's brief, however, State Farm's fourth issue on appeal poses the salient question for this Court's consideration. The remaining three issues are fairly subsumed within its challenge to the basis of the trial court's determination that State Farm owed DeCoster a duty to defend and indemnify in the third-party action.

paring the four corners of the insurance contract to the four corners of the complaint. An insurer may not justifiably refuse to defend a claim against its insured unless it is clear from an examination of the allegations in the complaint and the language of the policy that the claim does not potentially come within the coverage of the policy. Significantly, [i]t is not the actual details of the injury, but the nature of the claim which determines whether the insurer is required to defend. In making this determination, the factual allegations of the underlying complaint against the insured are to be taken as true and liberally construed in favor of the insured.

*Penn–America Ins. Co. v. Peccadillos, Inc.,* 27 A.3d 259, 264–65 (Pa.Super.2011) (citations and quotation marks omitted).

 Unlike the duty to defend, a determination of the duty to indemnify is not necessarily limited to the factual allegations of the underlying complaint. "Rather, there must be a determination that the insurer's policy *actually* covers a claimed incident." *Am. States Ins. Co. v. State Auto Ins. Co.,* 721 A.2d 56, 63 (Pa.Super.1998) (quoting *Pacific Indem. Co. v. Linn,* 590 F.Supp. 643 (E.D.Pa.1984), *affirmed,* 766 F.2d 754 (3rd Cir.1985)). An insurer may rely on evidence outside of the complaint to ultimately prove it has no duty to indemnify.[2] Thus, "[a]s long as a complaint alleges an injury which may be within the scope of the policy, the insurer must defend its insured **until the claim is confined to a recovery the policy does not cover.**" *QBE Ins. Corp. v. M & S Landis Corp.,* 915 A.2d 1222, 1225 (Pa.Super.2007) (citations and quotation marks omitted) (emphasis added).

Accordingly, we initially look at the language of the policy to determine what instances obligate State Farm to provide coverage. To summarize, coverage is to be provided: (1) for a claim or suit brought against an **insured** for damages because of **bodily injury** or **property damage,** (2) caused by an **occurrence,** but excluding (3) **bodily injury** or **property damage** (a) which is either expected or intended by the **insured,** or (b) which is the result of willful and malicious acts of the **insured.** Complaint, Ex. A, (Homeowners Insurance Policy) at 15–16 (emphasis original).

In support of its contention that the trial court erred in denying its motion for summary judgment, State Farm first argues that the incident was not an "occurrence," which is defined as an accident under the policy, because DeCoster intended to shoot a gun at a person and cause injury to that person. State Farm further contends that the trial court erred because the policy exclusion for injuries "expected or intended" bars coverage. State Farm's Brief at 9. According to State Farm, the fact that DeCoster did not properly identify his victim "does not change the fact that his conduct, as alleged in the Complaint, was intentional." *Id.* Relying on this Court's opinion in *Germantown Ins. Co. v. Martin,* 407 Pa.Super. 326, 595 A.2d 1172 (1991), State Farm argues that DeCoster's intent to shoot an intruder could be transferred to Rydman, thus relieving State Farm from any duty to defend or indemnify DeCoster. *Id.* at 14–15.

Here, as noted by the trial court, Rydman's underlying complaint against DeCoster alleges:

19. Defendant, who was carrying a handgun, rounded the foot of the stairs

---

**2.** The facts were stipulated to by the parties in the case *sub judice* and set forth in a Stipulation of Facts filed of record.

and ran from the hallway and then through the living room toward the dining room, where he encountered Plaintiff, whom he mistook for an intruder. 20. Alarmed, [Plaintiff] instinctively ran the in [sic] other direction, and Defendant chased her in a circuit through the hallway, the living room and the dining room, until Plaintiff took a wrong turn and Defendant cornered her in the hallway. 22. Plaintiff also noticed, as Defendant approached her, that his eyes were extremely wide open, as if in fear or excitement. 23. Defendant then pointed the handgun at Plaintiff and shot her in the abdomen. 26. After the police responded to the call, Defendant, still unaware that he had shot Plaintiff, insisted to the police that he had shot a male intruder. 27. **In his drunken condition, to grab his handgun and run downstairs to confront a supposed intruder, without putting on his eyeglasses and without taking time to identify the person in his hallway before shooting, was a gross deviation from the standard of conduct that a reasonable person would observe in his situation.** 28. **Defendant's grossly negligent or reckless shooting of Plaintiff in the abdomen caused Plaintiff such grievous harm that she had to be transported by helicopter for emergency treatment in the trauma center at Hershey Medical Center.**

Trial Court Opinion, 3/14/12, at 4 (quoting Complaint, Ex. B, Rydman Complaint) (emphasis added).

█ We agree with the trial court that the factual allegations described a case of "an intended act with an unintended result," and, thus, DeCoster's action resulted in unintended consequences. Trial Court Opinion, 3/14/12, at 9. We further note that Rydman's complaint alleges that DeCoster was grossly negligent or reckless when he shot Rydman after running downstairs in a drunken condition, without his eyeglasses, and without taking the time to identify the person in the hallway. Complaint, Ex. B, Rydman Complaint, at ¶¶ 27, 28. Thus, while DeCoster intended to shoot someone that morning, Rydman contends that his precedent failure to take the necessary action to ascertain the identity of the person in his home was the cause of her injuries. She alleges that DeCoster's failure to take such action was demonstrative of his gross negligence or recklessness.

Indeed, there is nothing in her Complaint to suggest that his failure to ascertain who was in the hallway was attributable to anything but DeCoster's alleged negligence or recklessness. Insofar as State Farm does not allege its policy excludes coverage for DeCoster's negligent actions or, as a matter of law, exclude acts the consequence of which he did not intend, we conclude that the policy does not relieve State Farm from its duty to defend DeCoster against Rydman's claim. Rydman's claim is potentially within the scope of the policy. Accordingly, we conclude the trial court neither erred as a matter of law nor abused its discretion in denying State Farm's motion for summary judgment and granting Appellees' respective motions for summary judgment with respect to its duty to defend.

In doing so, we find *Martin* to be readily distinguishable. As noted above, in the case at bar, DeCoster was in his home, intoxicated, and under the mistaken impression that he shot an intruder. However, in *Martin,* the insured made the decision to travel to the home of a romantic rival. *Martin,* 595 A.2d at 1173. After knocking on the door and gaining entrance

to the home of his rival, the insured in *Martin* began systematically shooting occupants of the house. *Id.* Thus, in the present case there is a mistake of fact, while in *Martin,* no such mistake existed, and the insured's actions were excludable from the outset.

■ We now turn to the trial court's ruling relative to State Farm's duty to indemnify. As this Court explained in *Unionamerica Ins. Co., Ltd. v. J.B. Johnson,* 806 A.2d 431 (Pa.Super.2002):

> The duty to defend exists until such time when it is determined that the claim is confined to a recovery that the policy does not cover. *Erie Ins. Exchange v. Transamerica Ins. Co.,* 516 Pa. 574, 533 A.2d 1363, 1368 (1987). Facts will be further developed at trial. If, at the time of trial, facts are proven which demonstrate that the exclusion should apply, coverage will not be afforded Johnson Roofing. . . .

> It was premature for the trial court to rule on the indemnity question. Initially it must be determined whether Unionamerica is liable under the terms of the policy and the facts of the case. The duty to indemnify is a conditional obligation. The duty to indemnify arises only if, after trial on the third-party claim, it is determined that the loss suffered is covered by the terms of the policy. At this stage, while the trial court properly found Unionamerica was required to defend its insured, the court improperly ruled that Unionamerica had a duty to indemnify Johnson Roofing.

*Unionamerica Ins. Co., Ltd.,* 806 A.2d at 434. Similarly, in this case, we conclude the trial court's ruling on the duty to indemnify was premature.

■ Initially, we note that an insured's guilty plea in an underlying criminal matter does not necessarily bar, on the basis of an expected or intended exclusion, the insured from recovering under his or her homeowner's liability policy in an underlying civil action. *Stidham v. Millvale Sportsmen's Club,* 421 Pa.Super. 548, 618 A.2d 945, 956 (1992), *appeal denied,* 536 Pa. 630, 637 A.2d 290 (1993). A trial court must look at the specific facts of the case. In order to provide guidance to the trial courts in analyzing the specific facts of a given case, we hold that the critical inquiry is whether the insured's conduct was **intentionally wrongful** under tort law. In undertaking this inquiry, we find the framework utilized by the Arizona Supreme Court in *Transamerica Ins. Group v. Meere,* 143 Ariz. 351, 694 P.2d 181 (1984) to be helpful.

■ The insurer in *Meere* claimed that it did not have a duty to defend or indemnify its insured against the victim's tort action, which alleged that the insured intentionally assaulted the victim. The insured claimed that he acted in self-defense. The *Meere* court began its inquiry by examining the issue of whether intent in the exclusionary clause referred to the objective intent which accompanied the immediate act, or the actual subjective intent which motivated the insured's conduct. The court utilized an approach which analyzed the purpose of the exclusion and the public policy considerations, as well as the transaction as a whole, explaining as follows:

> Insurance policies are purchased "as protection against calamity." *Noble v. National American Life Insurance Company,* 128 Ariz. 188, 189, 624 P.2d 866, 867 (1981). The "business" principle here is that an insured seeks the safety of insurance against risks that are outside his control and the insurer agrees to cover for a premium based on actuarial calculations of the random occurrence (risk) of such events in a given

population. This principle is the basis for the "intentional exclusion" and, according to Appleman, is central to the purposes of insurance:

> The intentional exclusion is necessary to the insurer to enable it to set rates and supply coverage only if losses under policies are uncertain from the standpoint of any single policyholder, and if a single insured is allowed through intentional or reckless acts to *consciously* control risks covered by policy, *the central concept of insurance is violated.*

7A Appleman, *Insurance Law and Practice,* § 4492.01 at 21 (1979) (emphasis supplied) (citing *Bituminous Casualty Corporation v. Bartlett,* 307 Minn. 72, 78, 240 N.W.2d 310, 313 (1976)). Thus, as a matter of contract, it seems proper to conclude that the clause is designed by the insurer to exclude indemnification when the insured suffers a loss resulting from the exercise of his own volition; the exclusion applies because the insured is assumed to have controlled the risk.

From a non-contractual standpoint, the cases have taken the position that the clause also articulates a public policy which forbids contracts indemnifying a person against loss resulting from his own willful wrongdoing. *Globe American Casualty Co. v. Lyons,* 131 Ariz. 337, 641 P.2d 251 (App.1981); *Armstrong v. Security Insurance Group.,* 292 Ala. 27, 288 So.2d 134 (1973); *Gray v. Zurich Insurance Co.,* 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168 (1966); *Ambassador Insurance Co. v. Montes,* 147 N.J.Super. 286, 371 A.2d 292 (1977); 7A Appleman, supra, § 4501.09 (supplement 1982). These principles of contractual "intent" and public policy coincide; the provision is designed to prevent an insured from acting wrong-

fully with the security of knowing that his insurance company will "pay the piper" for the damages. That design is not served by interpreting the provision to exclude coverage in self-defense situations where the insured is not acting by conscious design but is attempting to avoid a "calamity" which has befallen him. *See Nielsen v. St. Paul Companies,* 283 Or. 277, 281, 583 P.2d 545, 547 (1978) (holding that the acts, though intentional, "must have been committed for the purpose of inflicting the injury and harm before either a policy provision excluding intentional harm applies or the public policy against insurability attaches").

*Meere,* 143 Ariz. at 355–56, 694 P.2d at 186 (emphasis in original). The court then determined that the relevant intent is not that which accompanies the immediate act, but the purpose which underlies the insured's basic conduct. Accordingly, the critical inquiry is whether the conduct which led to the act was intentionally wrongful from the viewpoint of the law of torts. *Id.* at 359, 694 P.2d at 189. The court concluded, and we agree, that an insured should not be indemnified when he or she acted intentionally and wrongfully in committing a tort with the purpose of injuring another person. He or she should not be able to avoid the exclusionary clause by claiming he or she did not intend the precise injury, in terms of character, magnitude, or identity of the victim. *Id.* at 359, 694 P.2d at 189. Conversely, if the insured produces facts that establish privilege (as in a sports injury case) or under a claim of right recognized by law (as in self-defense), the insured's subjective intent can be explained, and it is then within the realm of the fact finder to determine whether the insured intended to wrongfully injure and whether the intentional injury exclusion is applicable. *Id.*[3]

In the case at bar, the parties stipulated that an intoxicated DeCoster, who was not wearing his glasses, mistook Rydman for an intruder, chased her through the house, shot her in the abdomen, and immediately called police and reported that he shot a male intruder. Parties' Stipulation of Facts, 9/2/11. Under these particular circumstances, we conclude that genuine issues of material fact exist as to DeCoster's subjective intent precluding summary judgment on the issue of indemnification.

For the reasons set forth above, we affirm the trial court order as to the duty to defend. However, we are constrained to reverse the order with respect to the duty to indemnify as being premature. Thus, the duty to indemnify will depend on the finder of fact's conclusions in the third-party action, filed by Rydman against De-Coster, with respect to whether DeCoster's conduct was intentionally wrongful under applicable tort law.

Order affirmed in part. Order reversed in part. Jurisdiction relinquished.

---

**3.** *See also: Spengler v. State Farm Fire & Cas. Co.,* 568 So.2d 1293 (Fla.App. 1 Dist.1990) (holding that where a homeowner shot his girlfriend believing she was an intruder, the exclusionary clause was not applicable when the injury to this particular victim was not intended, and the exclusion did not apply because the insured's intent to harm was not directed against his girlfriend whom he mistakenly shot); *Allstate Ins. Co. v. Merritt,* 772 S.W.2d 911, 912–913 (Tenn.App.1989) (stating that, in a case where a homeowner shot a sanitation worker mistaking him for an animal, the issue was not whether the insured intentionally fired a weapon; rather, it was whether the insured reasonably expected or intended the actual injury inflicted to result from his intentional act of firing the weapon.); *Curtain v. Aldrich,* 589 S.W.2d 61 (Mo.App. 1979) (exclusionary clause not applicable where insured beat brother-in-law, who he mistook as a burglar, with a crowbar).