875 P.2d 187

**REPUBLIC INSURANCE COMPANY,
a Delaware corporation, Plaintiff–
Appellee,**

v.

**Robert Michael FEIDLER,
Defendant–Appellant.**

No. 1 CA–CV 91–0504.

Court of Appeals of Arizona,
Division 1, Department C.

Dec. 28, 1993.

As Amended Jan. 27, 1994.

Review Denied June 21, 1994.*

* Feldman, C.J., of the Supreme Court, voted to grant the petition for review.

Susemihl & Davis, P.C. by Terry Davis, Phoenix, for defendant-appellant.

Joseph C. Dolan, Phoenix, for plaintiff-appellee.

## OPINION

LANKFORD, Presiding Judge.

Michael Feidler was injured by Tom Davis, an insured under a Republic homeowners insurance policy. Feidler appeals from a summary judgment in favor of Republic in a declaratory judgment action brought by the insurer. The judgment declared that the Republic policy does not cover injuries sustained by Feidler when Davis stabbed him. The superior court's judgment rests on its finding that an intentional acts exclusion in Republic's policy excludes coverage.

The central issue presented is whether Ariz.Rev.Stat.Ann. ("A.R.S.") section 13-807 [1] and Davis's no contest plea to aggravated assault preclude Feidler from arguing that Davis was so intoxicated that he did not "intend" his acts. We hold that section 13-807 does not preclude Feidler from arguing that Davis acted without an intent to injure. Consequently, an issue of fact remains: Did Davis act with an intent to injure? We reverse the summary judgment and remand for further proceedings.

We view the facts in a light most favorable to Feidler, as the party who opposed summary judgment. The evidence shows that on the evening of November 12, 1988, Tom Davis drank several beers, smoked marijuana, and drank several shots of tequila. After leaving a party at an apartment complex, Davis attempted to locate his truck, but he was too intoxicated to remember where he had parked it. Davis approached Feidler and his companion, P.F., and asked them to help him locate his truck. They refused, and an altercation ensued. During the fight, P.F. tackled Davis, and Feidler kicked Davis while Davis was on the ground. Eventually Feidler separated P.F. and Davis, and Feidler walked Davis approximately twenty yards away from P.F. While Feidler was walking back towards P.F., Davis ran towards Feidler and stabbed him several times in the back, causing severe injuries.

Davis pled no contest to aggravated assault for his attack on Feidler. Feidler provided statements to the police and in court recounting the attack. Davis, on the other hand, remembers nothing about the stabbing incident.

Davis is insured by a homeowner policy issued by Republic to Davis's parents. The homeowners policy excluded coverage for bodily injury caused by intentional acts of an insured. The "intentional acts" exclusion states that coverage does "not apply to bodily injury ... which is expected or intended by the insured."

Republic notified Davis that the policy did not cover his liability for the attack and that it would not defend him if Feidler were to bring a tort action. Consequently, Davis assigned his rights as an insured against Republic to Feidler in a *Damron* agreement. *See Damron v. Sledge,* 105 Ariz. 151, 153, 460 P.2d 997, 999 (1969). Republic agreed with Feidler that if a court found coverage under the homeowners policy, Feidler would receive the policy's limit of $300,000. Republic then filed the instant declaratory judgment action.

Republic moved for summary judgment based on the intentional acts exclusion. It argued that under A.R.S. section 13-807 the no contest plea collaterally estopped Davis from denying that he acted recklessly in disregard of a known risk. Republic also contended that an intent to injure is conclusively presumed when an insured violently attacks another person with a knife.

The superior court granted Republic's motion for summary judgment. The court stated that Davis and Feidler were precluded from denying "the factual basis obtained by the criminal trial judge." [2] The court deter-

---

1. A.R.S. section 13-807 provides:

   A defendant convicted in a criminal proceeding is precluded from subsequently denying in any civil proceeding the essential allegations of the criminal offense of which he was adjudged guilty, including judgments of guilt resulting from no contest pleas.

2. The "factual basis" is the evidentiary record in the trial court showing the defendant's commission of the offense. *See* Ariz.R.Crim.P. 17.3; *State v. Rivera,* 172 Ariz. 247, 249, 836 P.2d 460, 462 (App.1992). In this case, the "factual basis" apparently refers to statements made by Feidler recounting the attack. The factual basis is irrelevant to our analysis, however, because A.R.S. section 13-807 gives preclusive effect to the "es-

mined that the criminal proceeding had established that Davis unjustifiably attacked Feidler with a dangerous weapon with criminal intent. As a result, the court found no genuine issue of material fact regarding Davis's intent to injure Feidler.

After the superior court entered judgment, Feidler filed a motion for new trial. Feidler reasserted that there were material issues of fact preventing summary judgment. The superior court denied the motion for new trial and Feidler appealed.

Summary judgment is properly granted only when "there is no genuine dispute of material fact, only one reasonable inference can be drawn from those facts, and the moving party is entitled to judgment as a matter of law." *Ancell v. Union Station Ass'n, Inc.*, 166 Ariz. 457, 459, 803 P.2d 450, 452 (App. 1990). We review the entry of summary judgment *de novo*. *United Bank v. Allyn*, 167 Ariz. 191, 195, 805 P.2d 1012, 1016 (App. 1990).

■ On appeal, Feidler contends that there is a question of disputed fact: Did Davis's extreme intoxication at the time of the stabbing prevent him from having the subjective intent to injure Feidler? He argues that the issue of Davis's intent was not decided by the criminal court and that he cannot be estopped because he was not a party to the criminal proceeding.

Republic concedes that if at the time of attack Davis was intoxicated to the point of being in "total deprivation of intellect" then Davis lacked the requisite mental state to commit an intentional act. Republic asserts, however, that such a mental state is "totally incompatible" with Davis's no contest plea. Republic argues that pursuant to the preclusion statute, A.R.S. section 13–807, Davis's no contest plea to the criminal charge of aggravated assault collaterally estops both Davis and Feidler from arguing that Davis was too intoxicated to control his actions.

We hold that the superior court erred in granting summary judgment. The particular mental state required for Davis to be convicted of aggravated assault is not conclusive of whether Davis acted with the *different* mental state that would exclude coverage under

sential allegations" and not to the particular

the intentional act exclusion. Because a reasonable trier of fact could reasonably infer that Davis did intend to injure or that he did not, summary judgment was improperly granted.

■ We first examine the mental state required to bar coverage for Davis's acts under an intentional acts exclusion. When construing an exclusionary term in an insurance contract, we examine "the purpose of the exclusion in question, the public policy considerations involved and the transaction as a whole." *Transamerica Ins. Group v. Meere*, 143 Ariz. 351, 355, 694 P.2d 181, 185 (1984). In *Meere*, the Arizona Supreme Court considered an intentional acts exclusion virtually identical to the exclusion in Republic's policy. The court said that the provision is designed to exclude coverage when an insured acts from the "exercise of his own volition." *Id.* at 356, 694 P.2d at 186. The court explained that this provision excludes coverage for losses when the insured controls the risk and when the loss results from the insured's "own willful wrongdoing." *Id.* It is not enough that an insured commits an intentional act: the exclusion applies only when the insured has the subjective, specific intent to injure the victim. *Id.* at 356, 359, 694 P.2d at 186, 189. Determining an insured's subjective intent to injure is ordinarily a question of fact. *Farmers Ins. Co. v. Vagnozzi*, 138 Ariz. 443, 449, 675 P.2d 703, 709 (1983); *Safeco Ins. v. McGrath*, 63 Wash. App. 170, 817 P.2d 861, 864 (1991).

■ Although intent to injure is a fact question, a conclusive presumption of intent to injure arises when the insured commits an act "virtually certain to cause injury." *St. Paul Property & Liab. Ins Co. v. Eymann*, 166 Ariz. 344, 349, 802 P.2d 1043, 1048 (App. 1990). This presumption, known as the *Steinmetz–Clark* presumption, may apply "if the nature and circumstances of the insured's intentional act were such that harm was substantially certain to result." *Phoenix Control Sys. Inc. v. Insurance Co. of N. Am.*, 165 Ariz. 31, 36, 796 P.2d 463, 468 (1990); *see also Steinmetz v. National Am. Ins. Co.*, 121 Ariz. 268, 271, 589 P.2d 911, 914 (App.1979) (insured punched victim in the face); *Clark v. Allstate Ins. Co.*, 22 Ariz.App. 601, 602, 529

facts.

P.2d 1195, 1196 (App.1975) (insured struck person in the face).

In this case, Davis attacked Feidler with a knife. Ordinarily, this fact would be enough to justify a conclusive presumption that Davis intended to harm Feidler.

■ However, the overriding question is whether Davis was in control of his actions at the time of the attack. *Globe Am. Casualty Co. v. Lyons,* 131 Ariz. 337, 339–40, 641 P.2d 251, 253–54 (App.1981); *Eymann,* 166 Ariz. at 351, 802 Ariz. at 1050. The conclusive presumption of intent does not apply when the insured lacks the "mental capacity to act rationally." *Lyons,* 131 Ariz. at 339–40, 641 P.2d at 253–54. If the insured lacks the "mental capacity to act 'rationally,'" then the insured lacks the requisite subjective intent and the intentional acts exclusion does not apply. *Meere,* 143 Ariz. at 359, 694 P.2d at 189. In such a case the insured does not act "intentionally" because he does not control the risk of loss. *Id.* Application of the exclusionary clause would be "inconsistent with a primary purpose for incorporating intentional injury exclusions ..., i.e. to preclude individuals from benefiting financially when they deliberately cause injury." *Id.* (citations omitted).

■ We hold that the conclusive presumption does not apply if Davis were so intoxicated that he lacked the mental capacity to act intentionally. Courts in Arizona and other states, as well as commentators, have recognized that a voluntarily intoxicated insured may lack the mental capacity to act intentionally. *See Eymann,* 166 Ariz. at 352, 802 P.2d at 1051 (dictum); *Parkinson v. Farmers Ins. Co.,* 122 Ariz. 343, 345, 594 P.2d 1039, 1041 (App.1979) (dictum); *see also State Farm Fire & Casualty Co. v. Morgan,* 258 Ga. 276, 368 S.E.2d 509, 509–10 (1988) (question of fact whether the insured's voluntary intoxication deprived the insured of the specific intent required for the application of intentional act exclusion in homeowners insurance policy); *Nettles v. Evans,* 303 So.2d 306, 309 (La.App.1974) (evidence inconclusive to show that insured had the capacity to intend his acts); James L. Rigelhaupt, Jr., Annotation, *Liability Insurance: Intoxication or Other Mental Incapacity Avoiding Application of Clause in Liability Policy Specifically Ex-* *empting Coverage of Injury or Damage Caused Intentionally By or At Direction of Insured,* 33 A.L.R.4th 983 (1984); 10 *Couch on Insurance 2d* § 41.676, at 686 (rev. ed. 1982). *But see N.N. by Donovan v. Moraine Mut. Ins. Co.,* 148 Wis.2d 311, 434 N.W.2d 845, 848 n. 3 (1988) (citing cases following the "minority" rule that voluntary intoxication may not negate intent for purposes of determining insurance coverage).

The traditional test in Arizona to determine whether an insured possesses enough mental capacity to act intentionally applies to intoxication. The test was stated in *Globe Am. Casualty Co. v. Lyons,* 131 Ariz. 337, 340, 641 P.2d 251, 254 (App.1981):

"[I]f the insured was suffering from a derangement of his intellect which deprived him of the capacity to govern his conduct in accordance with reason and while in that condition [acted] on an irrational impulse ... his act cannot be treated as 'intentional' within the connotation of defendant's insurance contract."

(Quoting *Ruvolo v. American Casualty Co.,* 39 N.J. 490, 189 A.2d 204, 208–09 (1963)); *accord, Eymann,* 166 Ariz. at 351, 802 P.2d at 1050. The New Jersey Supreme Court— which decided *Ruvolo*—has determined that this test for mental incapacity is well adapted to cases in which the insured was too intoxicated to intend injury. *Burd v. Sussex Mut. Ins. Co.,* 56 N.J. 383, 267 A.2d 7, 15 (1970).

Thus, to determine coverage under the policy in this case, the trier of fact must determine whether Davis possessed sufficient mental capacity to form an intent to act under the *Lyons* standard. If Davis was incapable of forming the requisite intent, then the intentional acts exclusion would not apply. On the other hand, if Davis is found to possess the requisite mental capacity to form the intent, then the "Steinmetz–Clark" presumption of intent would conclusively establish that Davis intended to injure Feidler, and coverage would be defeated.

■ We now consider whether, under A.R.S. section 13–807, the issue of Davis's intent was precluded by the aggravated assault conviction. We hold the statute does not prevent Feidler from arguing that Davis was too intoxicated to form an intent to injure. Section 13–807 does not collaterally

estop Feidler because the mental state required for aggravated assault is not the same as that required by the intentional acts exclusion.

■ At most, section 13–807 prevents Feidler from denying that he had the minimally sufficient mental state necessary for an aggravated assault. Section 13–807 precludes a defendant convicted in a criminal proceeding from denying "the essential allegations of the criminal offense of which he was adjudged guilty, including judgments of guilt resulting from no contest pleas." In a no contest plea case, the "essential" mental state alleged is the minimum mental state necessary for conviction of that offense as defined by statute.

■ The mental state essential to Davis's conviction for aggravated assault is that he acted recklessly due to voluntary intoxication. Davis's conviction for aggravated assault required a mental state of "intentionally, knowingly or recklessly" causing "serious physical injury." A.R.S. §§ 13–1203(A)(1) and 13–1204(A)(1). These mental states are defined in A.R.S. section 13–105(6)(a)–(c). Of these three tiers of culpability, recklessness is the minimum mental state for aggravated assault.

"Recklessly" is defined in subsection (6)(c): "Recklessly" means, with respect to a result or to a circumstance described by a statute defining an offense, that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists.... A person who creates such a risk but is unaware of such risk *solely by reason of voluntary intoxication also acts recklessly* with respect to such risk.

A.R.S. § 13–105(6)(c) (emphasis added). This statute provides that a person acts recklessly even though he is voluntarily intoxicated at the time of his acts. Plainly stated, voluntary intoxication is not a defense to the charge of recklessly committing aggravated assault. *State v. Bravo*, 131 Ariz. 168, 171, 639 P.2d 358, 361 (App.1981). Even if Davis

was so intoxicated that he was not able to form an intent to injure, he still could be guilty of recklessly committing aggravated assault.

■ The essential mental state for aggravated assault differs from that required to exclude insurance coverage under an intentional acts exclusion. Because voluntary intoxication may deprive the insured of the mental capacity necessary to form an intent to injure, an insured can lack an intent to injure for purposes of the policy exclusion but at the same time can commit an aggravated assault by acting recklessly.[3] Because Davis's conviction established only that he acted recklessly, Davis and Feidler are not precluded from arguing that Davis lacked the mental capacity to intend to injure for insurance coverage purposes.

The superior court's determination that Feidler is precluded was erroneous for a second reason. Section 13–807 precludes only "[a] defendant in a criminal proceeding"; the statute does not give the conviction preclusive effect against other parties, such as the victim. Thus, the statute does not reach so far as to preclude Feidler from litigating the elements of Davis's conviction.

■ Moreover, the doctrine of collateral estoppel, which section 13–807 appears to adopt, does not preclude those who were not parties to the prior proceeding. Victims are not parties to a criminal trial. Collateral estoppel binds only parties, or their privies, to a prior proceeding. *Chaney Bldg. Co. v. City of Tucson*, 148 Ariz. 571, 573, 716 P.2d 28, 30 (1986). The doctrine is only invoked against a party who "had a full opportunity to litigate the matter and actually did litigate it." *Id.; accord Wetzel v. Arizona State Real Estate Dep't*, 151 Ariz. 330, 333, 727 P.2d 825, 828 (App.1986) (defensive use of collateral estoppel). A victim is not a party to the criminal trial and he has no opportunity to litigate the issues. The victim is therefore not precluded in a civil proceeding on issues decided in the criminal proceeding.

---

3. We also note that, without regard to voluntary intoxication, proof of acting recklessly under criminal law might not establish an intent to injure for insurance law purposes. *Cf. Transamerica Ins. Group v. Meere*, 143 Ariz. 351, 359–60, 694 P.2d 181, 189–90 (1984) (a jury may find that an insured's act of using too much force in

self defense was negligent and not committed with a specific intent to injure); *Globe Indem. Co. v. Blomfield*, 115 Ariz. 5, 7, 562 P.2d 1372, 1374 (App.1977) ("A finding of negligence necessarily includes a finding that the act was not intentional.").

*N.N. by Donovan,* 434 N.W.2d at 847–48; *Burd,* 267 A.2d at 14–15.

■ Republic argues for the first time on appeal[4] that Feidler is precluded because, as the assignee of Davis's rights under the insurance policy, Feidler stands in the insured's shoes. When an insured assigns his right to sue his insurer under a liability policy, the assignee takes only those rights that the defendant had. *Carpenter v. Superior Court,* 101 Ariz. 565, 567, 422 P.2d 129, 131 (1967). The assignee's rights are derivative of the insured's, and the assignee is subject to the same defenses as the defendant was. In this case, Davis's rights against Republic are subject to preclusion by section 13–807, and Feidler is Davis's assignee. Therefore, Republic argues, Feidler is similarly subject to the same preclusive effect.

Even if Feidler were as subject to preclusion as Davis, however, preclusion would not apply because the mental state invoked in the criminal conviction is not conclusive of that which would allow Republic to avoid coverage under its intentional acts exclusion.

■ We next consider whether the evidence in the record reveals a genuine dispute of material fact on this issue: Was Davis capable of forming an intent to injure?

■ The record contains evidence from which the trier of fact could reasonably draw different inferences regarding Davis's mental capacity. When competing reasonable inferences may be drawn from the undisputed facts, summary judgment should not be granted. *Orme School v. Reeves,* 166 Ariz. 301, 311, 802 P.2d 1000, 1010 (1990); *United Bank v. Allyn,* 167 Ariz. 191, 194–96, 805 P.2d 1012, 1015–17 (App.1990). The evidence before the trial court showed that Davis drank several beers, smoked marijuana, and drank several shots of tequila on the night of the stabbing. After leaving the party that night, Davis attempted to locate his truck, but he was too intoxicated to remember where he had parked it. Davis remembers nothing from the time he was being kicked until he was later apprehended by the police. He does not remember anything about the stabbing incident or where he obtained the

knife. From these facts, a reasonable trier of fact might, or might not, find that Davis was so intoxicated that he was incapable of forming an intent to act. Feidler was not required to submit expert testimony to show how alcohol negated Davis's ability to form intent. *See State v. Salazar,* 173 Ariz. 399, 407–08, 844 P.2d 566, 574–75 (1992) (alcohol intoxication is within jury's knowledge and experience, and does not require expert testimony).

The entry of summary judgment was erroneous. Accordingly, we reverse the judgment of the trial court and remand for further proceedings.

EHRLICH and FIDEL, JJ., concur.

---

454, 456, 815 P.2d 1, 3 (App.1991).