William R. POOLE, Plaintiff,

v.

STATE FARM FIRE & CASUALTY COMPANY, Defendant.

Civil Action No. 95–B–1711.

United States District Court, D. Colorado.

Oct. 16, 1996.

Daniel M. Reilly, Kim E. Laasko, McKenna & Cuneo, Denver, CO, for Plaintiff.

Jon F. Sands, Bostrom & Sands, P.C., Denver, CO, for Defendant.

## MEMORANDUM OPINION & ORDER

BABCOCK, District Judge.

In this declaratory judgment action, plaintiff, William R. Poole (Poole), seeks a determination that he is entitled to liability coverage under the terms of his homeowners insurance policy. Poole was convicted of first-degree murder. The estate of his victim then brought a wrongful death action against Poole. Poole seeks to force his insurance carrier to defend and indemnify him in the wrongful death action. Defendant, State Farm Fire & Casualty Co. (State Farm), moves for summary judgment based upon a provision in the policy excluding coverage for intentional acts causing bodily injury. Because I conclude that Poole is estopped from relitigating the issue of his intent after his criminal conviction, I will grant State Farm's motion.

## I.

The parties have stipulated to the following facts. Poole shot and killed Nathan Mosher in Trinidad, Colorado, on January 14, 1992. On that date, Poole had in effect a homeowners liability insurance policy (Policy), issued by State Farm. Mr. Mosher's parents sued Poole for the wrongful death of their son. Poole filed a claim under the Policy in April 1992. State Farm initially provided a defense to Poole under reservation of rights. Upon Poole's conviction for first-degree murder in the killing of Mr. Mosher, State Farm disclaimed coverage.

The criminal case was tried in Las Animas County District Court, Colorado. Poole refused to allow counsel to enter a plea of not guilty by reason of insanity or to assert the defense of impaired mental condition. The trial court ordered Poole to be examined by the Colorado Mental Health Institute. One staff psychiatrist at the Institute opined that Poole was legally sane at the time of the shooting; however, a different staff psychiatrist concluded that Poole was legally insane at the time of the shooting. The court found that Poole was competent to stand trial and that entry of a plea of not guilty by reason of insanity, against Poole's wishes, was not necessary for a just determination of the charges.

The trial court excluded evidence regarding Poole's mental condition because the affirmative defense of impaired mental condition had not been specifically asserted. The case was tried to a jury, and Poole was convicted of first-degree murder. He is incarcerated in a Colorado state penitentiary. His conviction was affirmed by the Colorado Court of Appeals on March 17, 1994.

Poole filed this action on June 19, 1995 in Las Animas County District Court. State Farm removed the case to this court pursuant to 28 U.S.C. §§ 1441(a) & 1332. Poole seeks a declaration that State Farm is required to defend and indemnify him in the action brought by Mr. Mosher's parents for wrongful death.

## II.

### SUMMARY JUDGMENT STANDARD

The very purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir.1995). Fed.R.Civ.P. 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The nonmoving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Ca-*

*trett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2551, 91 L.Ed.2d 265 (1986).

## CHOICE OF LAW

■ In a diversity action, federal district courts apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Looking to the law of this forum state, Colorado has adopted the Restatement (Second) of Conflict of Laws (1971) for resolving choice of law issues arising in contract actions. *Wood Brothers Homes v. Walker Adjustment Bureau,* 198 Colo. 444, 447, 601 P.2d 1369, 1372 (1979). The objective of the Restatement is to identify the state having the most significant relationship to the particular issue. *Id.*

■ To determine the state with the most significant relationship to the issue, Colorado courts apply the factors set forth in §§ 6 & 188 of the Restatement. Among other factors, a court should consider "the relevant policies of the forum," "the protection of justified expectations," "certainty, predictability and uniformity of result," and "ease in the determination and application of the law to be applied." Restatement § 6(2). In a contract action, the contacts to be taken into account in applying the factors in § 6 include: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) location of the subject matter of the contract, and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties. Restatement § 188; *Wood Brothers,* 601 P.2d at 1372.

■ Applying these principles here, it is apparent that Arizona has the most significant contacts with issues arising as to the interpretation of the contract itself. The Policy was issued by a State Farm office in Tempe, Arizona, and covered Poole's home in Scottsdale. Thus, I conclude that Arizona law applies to a determination of the rights and duties of the parties with respect to the contract.

■ The "contacts" listed in § 188, however, were not intended to address the issue of which state's law applies to a question of the preclusive effect of a judgment in a case that happens to involve a contract. Rather, the Restatement provides a separate section to address issue preclusion questions. *See,* Restatement (Second) of Conflict of Laws § 95 (1982) ("What issues are determined by a valid judgment is determined, subject to constitutional limitations, by the local law of the State where the judgment was rendered.").

Although Colorado has not expressly adopted Restatement § 95, I am persuaded that the policy of § 95 is consistent with the general principles set forth in § 6, which Colorado has adopted. Colorado has a more significant interest than Arizona in determining the preclusive effects of its own criminal judgments. Thus, I conclude that Colorado law governs the question whether Poole's prior criminal conviction in Colorado precludes him from relitigating the issue of his intent at the time of the shooting.

## III.

■ The Policy states, in pertinent part: "Coverage L and Coverage M do not apply to ... bodily injury or property damage ... which is either expected or intended by an insured...." Ex. 1 to Stip. of Facts, p. 16. Under Arizona law, this language is considered an "intentional acts exclusion." *Republic Ins. Co. v. Feidler,* 178 Ariz. 528, 875 P.2d 187, 189 (Ct.App.1993). For the exclusion to apply, it is not enough that the insured committed an intentional act. Rather, the insured must have had a subjective, specific intent to injure the victim. *Id.* 875 P.2d at 190. Where the insured lacks the "mental capacity to act rationally," the intentional acts exclusion does not apply. *Id.* at 191.

■ If Poole intended to injure Mosher within the meaning of the exclusion, State Farm is not required to defend or indemnify him. However, if Poole is permitted to and does show that there is a genuine issue of material fact as to his mental competence at the time he shot Mosher, State Farm cannot prevail on its summary judgment motion. Thus, the threshold question is whether Poole is precluded from litigating here the issue of his mental capacity at the time of the shooting.

State Farm contends that the issue of Poole's intent was necessarily decided in his criminal prosecution for first-degree murder. Because litigation of Poole's mental capacity at the time of the shooting would be a collateral attack on the jury's finding of intent, State Farm argues that Poole should be precluded from litigating the issue here. State Farm contends that Poole had a full and fair opportunity to litigate the issue of intent, including any defenses of mental defect, at his criminal trial. Poole seeks to muddy the waters by arguing that because the issue of his mental capacity was never litigated during the criminal prosecution, he cannot be estopped from raising it here. I agree with State Farm, and I will therefore grant its motion for summary judgment.

In Poole's criminal trial, the jury was instructed that the elements for murder in the first degree are: "(1) that the defendant, (2) in the State of Colorado, at or about the date and place charged, (3) with intent, (4) to cause the death of a person other than himself, and (5) after deliberation, (6) caused the death of that person or another person, (7) [without an affirmative defense.]" Instruction. No. 14. The jury was also instructed that "[a] person acts 'intentionally or with intent' when his conscious objective is to cause the specific result proscribed by the statute defining the offense." Instruction No. 10. Further, the jury was instructed that " 'AFTER DELIBERATION' means not only intentionally, but, also, that the decision to commit the act has been made after the exercise of reflection and judgment concerning the act. An act committed after deliberation is never one which has been committed in a hasty or impulsive manner." Instruction No. 15. Finally, the jury was informed that in order to convict, it must find Poole guilty beyond a reasonable doubt. Instruction No. 5.

Therefore, by returning a verdict against Poole on the count of first-degree murder, the jury found, beyond a reasonable doubt, that Poole intentionally killed Mr. Mosher "after the exercise of reflection and judgment." To prevail here, State Farm need only show by a preponderance of the evidence that Poole acted with subjective, specific intent to injure Mosher. *See Republic Ins. Co. v. Feidler, supra* at 189. Under the court's instructions at his criminal trial, it is patent that the jury made this finding beyond a reasonable doubt. It follows that the jury's guilty verdict under the higher criminal burden of proof as to this issue of fact should preclude Poole from relitigating the issue of his intent here. Poole contends, however, that the elements for applying the doctrine of issue preclusion have not been met.

Under Colorado law, the doctrine of issue preclusion (collateral estoppel) provides that the "final decision of a court on an issue actually litigated and determined is conclusive of that issue in any subsequent suit." *Pomeroy v. Waitkus*, 183 Colo. 344, 350; 517 P.2d 396, 399 (Colo.1974) (en banc). Issue preclusion applies when four criteria are met: (1) the issue decided in the prior case is identical with the one presented in the action in question; (2) there was a final judgment on the merits; (3) the party against whom the preclusion is asserted was a party to the prior adjudication; and (4) the party against whom preclusion is asserted had a full and fair opportunity to litigate the issue in the prior adjudication. *Id.* Poole argues, for related reasons, that the first and fourth prongs of this test have not been satisfied. Specifically, Poole contends that the issue of intent in the criminal trial is not identical to the intent issue here because Poole's mental capacity was not considered in determining his intent in the criminal trial. Consequently, Poole argues that he did not have a full and fair opportunity to litigate the issue of intent, including the sub-issue of his mental capacity. I remain unpersuaded.

In general, issue preclusion is broader than claim preclusion (res judicata) in that it applies to causes of action different from those in the original action. *Id.* However, issue preclusion is narrower than claim preclusion in that it does not apply to matters that could have been litigated but were not. *Id.* Poole argues, therefore, that he should be given the opportunity to litigate the "issue" of his mental competence at the time of the murder despite his criminal conviction.

Poole's argument, however, misconstrues what is meant by an "issue" in this context.

According to Poole, legal insanity, which he chose not to litigate in his criminal trial, constitutes a separate "issue" that has not yet been litigated. In support of his argument, Poole cites *Pomeroy v. Waitkus,* 183 Colo. 344, 350; 517 P.2d 396, 399 (Colo.1974) (en banc). In that case, defendant Pomeroy was found negligent and liable when sued by Zeiler for injuries sustained when Zeiler was a passenger in a car driven by Pomeroy. A second passenger, Waitkus, then sued Pomeroy and moved for summary judgment as to liability based on the preclusive effects of the Zeiler action. The Colorado Supreme Court held that issue preclusion did not apply because Pomeroy was asserting the affirmative defenses of contributory negligence and assumption of risk, which had not been at issue in the Zeiler case. *Pomeroy,* 183 Colo. at 351–52; 517 P.2d at 400.

*Pomeroy* is distinguishable on two grounds. First, the court in *Pomeroy* stated that contributory negligence and assumption of risk are personal defenses that may apply to one passenger and not to another. *Id.* Therefore, even if Pomeroy had raised those defenses against Zeiler and lost, he would not have been precluded from raising them against Waitkus. Here, the jury's finding of Poole's intent at the time of the murder is not so limited in scope.

Second, the court recognized that a finding of negligence in the Zeiler case could still be given preclusive effect, as it would not be inconsistent with a finding that Waitkus was contributorily negligent or that he assumed the risk. *Id.* Thus, Pomeroy could be found negligent, as he was in Zeiler's case, and still be relieved of some liability by proving that Waitkus was also partially responsible. In contrast, Poole cannot be held to have intentionally killed Mosher *and* to have been legally insane when he killed Mosher. The two are logically and legally inconsistent. A finding that Poole intentionally killed Mosher necessarily sounds the clarion call that he had the mental capacity to do so. To determine in this action that Poole did not act with the requisite intent to commit first degree murder would be to hold that the jury in the

criminal trial was wrong, which is not permitted under the doctrine of issue preclusion.

It is apparent that if Pomeroy had tried to relitigate the issue of his negligence by pointing to a previously unarticulated reason why proximate cause was lacking, the Colorado Supreme Court would not have regarded that as a separate "issue" that could escape the preclusive effects of the earlier judgment. Similarly, here, Poole cannot escape the preclusive effect of the guilty verdict by casting the question of his mental competence at the time of the shooting as a separate "issue" from the already-decided issue of intent. Poole had a full and fair opportunity to litigate the issue of intent in his criminal trial. He chose instead to base his criminal defense on other grounds. Poole cannot now assert either that his intent was not at issue in his criminal trial or that he should be permitted to relitigate it here.

Poole also cites the Restatement of Judgments (Second) § 27, cmt. e (1982), which states that "[a]n issue is not actually litigated if the defendant might have interposed it as an affirmative defense but failed to do so." Colorado has not adopted this section of the Restatement. Further, the cited language is not inconsistent with my reading and application of *Pomeroy* here. As *Pomeroy* held, where the assertion of an affirmative defense is not inconsistent with a previous judgment, issue preclusion does not apply. The more pertinent question, and one the Restatement does not directly answer, is whether an affirmative defense that would negate a previous judgment on an issue is precluded. Here again, I conclude that Poole is precluded from relitigating the issue of his intent, including the sub-issue of his mental competence. Simply put, determination beyond a reasonable doubt that one acted with deliberative intent necessarily negates questions of diminished mental capacity and legal insanity.

Poole also relies on several cases from New Jersey that hold that entry of a guilty plea does not preclude relitigation of the insured's intent in a subsequent coverage action. *Prudential Property and Casualty Ins. Co. v. Kollar,* 243 N.J.Super. 150, 578 A.2d 1238 (1990); *Garden State Fire and*

*Casualty Co. v. Keefe,* 172 N.J.Super. 53, 410 A.2d 718 (1980). There, the courts reasoned that because the insured was operating under selfish motives in accepting the plea bargain, the victim should not be estopped from recovering from the insured and his carrier. *Id.* These cases are inapposite.

Poole, not the victim or his family, is seeking relief here. In addition, New Jersey draws a distinction between the preclusive effect of a guilty plea and that of a conviction after trial. *Prudential,* 578 A.2d at 1240. Further, the plea bargain cases from New Jersey are of questionable weight because many jurisdictions hold that guilty pleas do, in fact, preclude relitigation of intent in insurance coverage cases. *Ideal Mutual Ins. Co. v. Winker,* 319 N.W.2d 289 (Iowa 1982); 35 A.L.R. 4th 1063 § 4[b]. Finally, unlike in the case of a plea bargain, an insured charged with first-degree murder who goes to trial facing life in prison has every incentive and a full and fair due process opportunity to litigate all possible defenses.

In addition to issue preclusion, State Farm presents a second persuasive reason why it is entitled to summary judgment. Both Colorado and Arizona courts recognize a presumption that a person who performs an act that is virtually certain to cause injury intended to cause such injury. *Butler v. Behaeghe,* 37 Colo.App. 282, 287; 548 P.2d 934, 938 (1976); *Republic Ins. Co. v. Feidler,* 875 P.2d 187, 190 (Ariz.Ct.App.1993). At least one Colorado court has taken the presumption a step further. In *Swentkowski v. Dawson,* the court held that an adjudication of delinquency for violation of a statute requiring a knowing culpable mental state was sufficient to establish a *conclusive* presumption of intent in a coverage action because intent was an element of the offense. 881 P.2d 437, 440 (Colo.Ct.App.1994).

Poole argues that *Swentkowski* is inapposite because the court did not specifically address whether the insured had litigated all of his defenses to the intent element in the delinquency proceeding. Rather, he says, the insured may have simply been arguing that delinquency proceedings have no preclusive effect at all. Again, I am not persuaded. *Swentkowski* emphasized the constitutional protections inherent in a delinquency proceeding, namely that allegations must be proved beyond a reasonable doubt. *Id.* Poole enjoyed the full panoply of constitutional protections available to any defendant in a criminal prosecution. Further, *Swentkowski* seemed unconcerned with what theories the insured may have had to rebut the presumption of his intent to injure. Rather, the court treated intent as an issue that could not be broken down into subparts and litigated in a piece-meal fashion. In many respects it appears the rule in *Swentkowski* is a common sense corollary to an analysis of issue preclusion. The result is the same here. Under Colorado law, I hold that intent is an indivisible issue that, when finally decided in a previous criminal prosecution, cannot be relitigated in an action to avoid the clear intentional acts exclusion of an insurance policy.

Accordingly, it is ORDERED that

1. State Farm's motion for summary judgment is GRANTED and this case is DISMISSED with prejudice.

2. State Farm is awarded its costs.