985 P.2d 530

**WESTERN AGRICULTURAL INSURANCE COMPANY, an Arizona corporation, Plaintiff–Appellee,**

v.

**Richard BROWN and Dorothy Brown, parents of John Delor Brown, and the Estate of John Delor Brown, Dorothy B. Brown, as mother and Guardian Ad Litem for John Delor Brown, Jr., Michael Allen Brown and Arlene Fay Brown, minors; Darel Fruhwirth and Diana Fruhwirth, husband and wife, as Guardians and Conservators for Shelby Alexander Sinclair, Vanessa Michelle Kogianes and Socrates Michael Kogianes, Richard S. Rosen and Ruth Rosen, husband and wife, Defendants–Appellants.**

No. 1 CA–CV 97–0464.

Court of Appeals of Arizona,
Division 1, Department D.

Nov. 10, 1998.

Reconsideration Denied Dec. 29, 1998.

Review Denied Sept. 21, 1999.

Bess Kunz, P.C. by Matthew D. Kleifield and Donald J. Sapala, Phoenix, Attorneys for Plaintiff–Appellee.

Wachtel, Biehn & Malm by Denis R. Malm and Rex L. Martin, Lake Havasu City, Attorneys for Defendants–Appellants Fruhwirth and Rosen.

Ostreicher & Vatz, P.C. by Jeffrey I. Ostreicher and Michael L. York, Phoenix, Attorneys for Defendants–Appellants Richard and Dorothy Brown and the Estate of John Delor Brown.

Stephen M. Lee, Kingman, Attorney for Defendant–Appellant Dorothy B. Brown.

## OPINION

NOYES, Judge.

¶ 1 Dr. Michael Kogianes shot his wife and her companion a total of nine times, and he said to the dying companion, "This is the last marriage you'll ever break up." Kogianes was convicted of two counts of premeditated first degree murder by a jury that rejected his insanity defense. Kogianes and the victims' survivors then sought insurance coverage from Western Agricultural Insurance Co. ("Western"), which insured Kogianes for liability from bodily injury. Western filed this action, seeking a declaration that its insurance policy did not cover Kogianes for these two murders. The trial court granted summary judgment to Western, and we affirm.

### I.

¶ 2 Kogianes's policy with Western provided primary liability coverage of $300,000 for each person and occurrence; an umbrella rider provided another $1 million in coverage. The policy required Western to defend a claim or suit against Kogianes for bodily injury or property damage caused by an "occurrence," and to pay up to policy limits all damages for which he was legally liable. The policy defined "occurrence" as "an unexpected and unintended event ... which results in bodily injury or property damage during the policy period." The umbrella de-

fined "occurrence" as "an accident ... during the policy term, which results in personal injury or property damage neither expected nor intended by [the insured]."

¶3  The policy excluded coverage for bodily injury or property damage that "is intentionally caused by any insured" or "[a]ris[es] out of a violation of a criminal law, except traffic violations, if committed by any insured." The umbrella excluded coverage for injury or damage "arising out of an intentional act committed by or at [the insured's] direction."

¶4  In granting summary judgment to Western, the trial court found "that A.R.S. 13–807 would preclude Dr. Kogianes from any sort of recovery against the Plaintiff and based upon the 'standing in the shoes' argument, the other Defendants have no greater right against the Plaintiff than Dr. Kogianes would have...." Kogianes did not appeal, but the victims' survivors ("Appellants") did. We have jurisdiction under Arizona Revised Statutes Annotated ("A.R.S.") section 12–2101(B) (1994).

## II.

¶5  The question is whether, as a matter of law, the intentional acts exclusion applies to these murders. We review this question of law de novo. See State ex rel. Miller v. Superior Ct. (Stephens), 189 Ariz. 228, 230, 941 P.2d 240, 242 (App.1997).

¶6  An intentional acts exclusion is based on the principle that insurance is intended to protect against risk that is beyond the control of the insured. See Transamerica Ins. Group v. Meere, 143 Ariz. 351, 355–56, 694 P.2d 181, 185–86 (1984). The intentional acts exclusion also "articulates a public policy which forbids contracts indemnifying a person against loss resulting from his own wilful wrongdoing." Id. at 356, 694 P.2d at 186.

¶7  Although intentional acts do not trigger the exclusion unless harm is in-

tended, see Republic Ins. Co. v. Feidler, 178 Ariz. 528, 531, 875 P.2d 187, 190 (App.1994), where an "act was intentional and there was either a subjective desire to cause some specific harm (intent) or substantial certainty (expectation) some significant harm would occur, the insured will not be heard to say that the exclusion does not apply because the injury was more severe or different from what was intended." Ohio Cas. Ins. Co. v. Henderson, 189 Ariz. 184, 191, 939 P.2d 1337, 1344 (1997) (citing Meere, 143 Ariz. at 359, 694 P.2d at 189). This presumed intent to harm, known as the Steinmetz–Clark presumption,[1] is conclusive if it applies. See Meere, 143 Ariz. at 357–58, 694 P.2d at 187–88; St. Paul Property & Liab. v. Eymann, 166 Ariz. 344, 349, 802 P.2d 1043, 1048 (App. 1990). Thus, coverage is precluded "if the insured's claim that he did not intend or expect the injury 'flies in the face of all reason, common sense and experience.'" Henderson, 189 Ariz. at 191, 939 P.2d at 1344 (quoting Auto Club Group Ins. Co. v. Marzonie, 447 Mich. 624, 527 N.W.2d 760, 768 (Mich.1994)). Obviously, when the insured has knowingly fired nine bullets into two people, a claim that he intended no harm "flies in the face of all reason, common sense and experience." See id.

¶8  Appellants claim that Kogianes was insane and so was not responsible for his actions. Kogianes raised an insanity defense at his criminal trial, and he presented expert and other testimony in support of that defense. The Steinmetz–Clark presumption does not apply where the insured lacks the mental capacity to act rationally and to form the subjective intent to harm. See Feidler, 178 Ariz. at 532, 875 P.2d at 191. In considering an insured's insanity defense, we have adopted the test set forth in Ruvolo v. American Casualty Co., 39 N.J. 490, 189 A.2d 204 (N.J.1963), as follows:

> [I]f the insured was suffering from a derangement of his intellect which deprived him of the capacity to govern his conduct

---

1. *Steinmetz v. National American Insurance Co.,* 121 Ariz. 268, 271, 589 P.2d 911, 914 (App. 1978), held that "if the injury results from the natural and probable consequences of the intentional act, the subjective intent of the actor is simply immaterial—the exclusion applies." *Clark v. Allstate Insurance Co.,* 22 Ariz.App. 601, 602, 529 P.2d 1195, 1196 (1975), held that "the act of striking another in the face is one which we recognize as an act so certain to cause a particular kind of harm that we can say a person who performed the act intended the resulting harm, and his statement to the contrary does nothing to refute that rule of law."

in accordance with reason and while in that condition [acted] on an *irrational impulse* ... his act cannot be treated as "intentional" within the connotation of defendant's insurance contract.

*Globe Am. Cas. Co. v. Lyons,* 131 Ariz. 337, 340, 641 P.2d 251, 254 (App.1981) (quoting *Ruvolo,* 189 A.2d at 208–09) (emphasis added).

¶ 9 Appellants argue that *Lyons* controls. We disagree. The jury that convicted Kogianes of first degree murder necessarily decided that he did not act on an irrational impulse. A person commits first degree murder if, "[i]ntending or knowing that the person's conduct will cause death, such person causes the death of another with premeditation." A.R.S. § 13–1105(A)(1) (Supp.1997). " 'Premeditation' means that the defendant acts with either the intention or the knowledge that he will kill another human being, when such intention or knowledge precedes the killing by a length of time to permit reflection. An act is not done with premeditation if it is the instant effect of a sudden quarrel or heat of passion." A.R.S. § 13–1101(1) (1989).

¶ 10 An act cannot be both premeditated and impulsive. *See Moore v. State,* 65 Ariz. 70, 82, 174 P.2d 282, 290 (1946) (The jury "must not be misled into thinking that an act can at the same time be ... impulsive, unstudied, and premeditated."); *State v. Ramirez,* 190 Ariz. 65, 71, 945 P.2d 376, 382 (App.1997) ("In our opinion, a killing cannot be both impulsive and premeditated. . . .").

■ ¶ 11 The jury rejected Kogianes's claim that he was insane and concluded that he killed knowingly and with premeditation. Such a conclusion necessarily involves the determination that Kogianes was not "suffering from a derangement of his intellect which deprived him of the capacity to govern his conduct in accordance with reason and while in that condition acted on an irrational impulse." *Lyons,* 131 Ariz. at 340, 641 P.2d at 254 (quoting *Ruvolo,* 189 A.2d at 208–09). We hold that, when the insured has been convicted of premeditated first degree mur-

der, *Lyons* does not control and the *Steinmetz–Clark* presumption does.

¶ 12 The trial court concluded that the A.R.S. section 13–807 (1989) preclusion applied. We agree. As relevant here, A.R.S. section 13–807 provided that "[a] defendant convicted in a criminal proceeding is precluded from subsequently denying in any civil proceeding the essential allegations of the criminal offense of which he was adjudged guilty. . . ." [2]

■ ¶ 13 Appellants have no independent interest in the Western insurance policies; in relation to those contracts, Appellants "stand in the shoes" of Kogianes. They therefore take only the rights Kogianes has under those contracts. *See K.B. v. State Farm Fire & Cas. Co.,* 189 Ariz. 263, 267, 941 P.2d 1288, 1292 (App.1997). Because section 13–807 precludes Kogianes from denying the essential elements of his convictions, it precludes Appellants from denying those elements.

■ ¶ 14 Appellants argue that collateral estoppel is inapplicable because Kogianes faced a higher burden of proof in the criminal case than he would in the civil case. However, it is section 13–807, not the doctrine of collateral estoppel, that precludes relitigation of issues in the civil case. Section 13–807 is not a codification of the collateral estoppel doctrine, and it does not incorporate the rules and requirements of that doctrine. In section 13–807, the legislature precluded defendants from denying in a civil case the essential elements of their conviction in a criminal case, with no exceptions granted. Although defendants have a higher burden of proof in criminal cases than in civil cases on the issue of insanity, *see* A.R.S. section 13–502 (Supp.1997) (requiring criminal defendant to prove insanity by clear and convincing evidence), it would be contrary to the clear intention of section 13–807 to allow a person whom one jury found sane for purposes of a premeditated first degree murder conviction to ask another jury to find him insane for purposes of liability insurance coverage.

2. Section 13–807 was amended by Laws 1993, Chapter 255, section 15, effective January 1, 1994, to narrow its application from "any civil proceeding" to "any civil proceeding brought by the victim or this state against the criminal defendant." The new version applies to offenses committed after the effective date. The offenses in this case occurred in December 1992.

¶15 Appellants argue that, even if section 13–807 precludes them from denying that Kogianes knowingly committed the murders, they can still deny that he acted intentionally. *Feidler* held that section 13–807 prevented a defendant from denying only the *minimum mental state necessary for the conviction.* 178 Ariz. at 533, 875 P.2d at 192. Appellants argue that the minimum mental state for first degree murder is "knowingly," and because that is a lesser mental state than "intentionally," the convictions do not establish that the intentional acts exclusions apply. We disagree. Interpretation of an insurance policy is a question of civil law, where "intentional" has a broader meaning than it has in criminal law.

¶16 The Restatement (Second) of Torts defines intent as denoting "that the actor desires to cause [the] consequences of his act, or that he believes that the consequences are substantially certain to result from it." Restatement (Second) of Torts § 8A (1965). The accompanying comment states that "[i]ntent is not ... limited to consequences which are desired. If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result." *Id.* cmt. b.[3]

¶17 The judgment is affirmed.

CONCURRING: EDWARD C. VOSS, Judge.

THOMPSON, Judge, concurring.

¶18 I agree with the decision set forth above. I write separately only to indicate that we should signal a retreat from the *Lyons* dictum employing a version of the irresistible impulse test for mental capacity. The *Lyons* court wrote before John Hinckley, who shot President Reagan, was acquitted by a jury. The Hinckley case, and the public outrage that followed, occasioned a reevaluation of progressive movements favoring a liberalized *volitional* standard[4] for measuring insanity. As a consequence, the medical community now acknowledges that it cannot discern whether an offender could not or would not control himself. *See* Richard J. Bonnie, *The Moral Basis of the Insanity Defense*, 69 A.B.A.J. 194, 196 (1983). Since we cannot know with any confidence whether a person committing a violent act suffers from an incapacity to "govern his conduct in accordance with reason" due to mental derangement, or whether he just chooses not to regulate his conduct, tests that are based on measures of volition are futile and invite deception and fabrication. The acts of one who knows the right but chooses the wrong cannot be indemnified, consistent with well-established public policy which we reaffirm here.

¶19 Since the tortfeasor in *Lyons* was M'Naghten insane,[5] borrowing the volitional test from the New Jersey Supreme Court was gratuitous.[6] Although we have continued to cite the *Lyons* dictum approvingly since 1981, I would abandon it.

---

3. By contrast, the Arizona criminal code provides as follows: " 'Intentionally' or 'with intent to' means, with respect to a result or to conduct described by a statute defining an offense, that a person's objective is to cause that result or to engage in that conduct." A.R.S. § 13–105(9)(a) (Supp.1997).

4. One such liberalized standard, the Model Penal Code provision (commonly known as the "ALI test") for an insanity defense, embodied a concept that one should be relieved of responsibility even for "propulsions that are accompanied by brooding or reflection." Phillip E. Johnson, *Note: The Turnabout in the Insanity Defense, in* CRIMINAL LAW 349, 350 (West Publ'g Co.3d. ed., 1985). Thus, our holding here (which I join), that the jury finding that Kogianes committed premeditated murder means that he acted intentionally within the meaning of the intentional acts exclusion, might involve a non-sequitur if we must employ a volitional standard for the latter. In the murky world of volition, it might be possible to act on impulse after reflection.

5. *See Globe American Cas. Co. v. Lyons*, 131 Ariz. 337, 343 n. 2, 641 P.2d 251, 257 n. 2 (App.1981).

6. Indeed, prior to New Jersey's *Ruvolo* decision, it was widely assumed, not without good reason, that the standard for insanity for purposes of the intentional acts exclusion was the same as the test for the insanity defense in criminal cases. *See Nat'l Life & Accident Ins. Co. v. Hannon*, 212 Ala. 184, 186, 101 So. 892, 894, (1924); *Mark-*

# 50

*land v. Clover Leaf Cas. Co.,* 209 S.W. 602, 605 (Mo.App.1919); *Travellers' Ins. Co. v. Houston,* 3 Willson 508, 509 (1888) (insanity standard same in civil and criminal cases).