675 P.2d 703

**FARMERS INSURANCE COMPANY OF ARIZONA, an Arizona corporation,**
**Plaintiff-Appellee,**

v.

**Mark VAGNOZZI, a single man,**
**Defendant-Appellant.**

**No. 15687–PR.**

Supreme Court of Arizona,
En Banc.

Dec. 2, 1983.

Paul W. Holloway, Phoenix, for plaintiff-appellee.

Hofmann, Salcito, Stevens & Myers by Leroy W. Hofmann, Phoenix, for defendant-appellant.

HAYS, Justice.

This is an appeal from a summary judgment granted in favor of Farmers Insurance Company in a declaratory judgment action. We have jurisdiction pursuant to 17A A.R.S., Arizona Rules of Civil Appellate Procedure, rule 19(f).[1] The issues on appeal relate to the doctrine of collateral estoppel as it applies between an indemnitor and indemnitee, and to the insurance policy's exclusion of coverage for intentional acts by the insured.

Farmers Insurance Company of Arizona issued to Eddie Arias a "homeowners package policy" in which Farmers agreed to pay "all damages from an accident which an insured is legally liable to pay because of bodily injury or property damage covered by this policy," and to defend the insured at its expense against any covered claim or suit. The policy defines "accident" as "a sudden event ... resulting in bodily injury or property damage neither expected nor intended by the insured." The policy expressly excludes from coverage bodily injury or property damage "arising as a result of intentional acts of the insured."

---

1. Formerly rule 19(e), amended April 23, 1983.

In October of 1979, Arias injured appellant Vagnozzi in a scuffle during a three-on-three recreational league basketball game. Vagnozzi filed a suit in negligence against Arias for personal injury damages. Farmers retained an attorney to defend Arias in the tort suit and sent a reservation of rights letter to Arias stating it would defend Vagnozzi's claim without waiving any of the rights under the policy. Farmers also filed a declaratory judgment action seeking a determination that its homeowners package insurance policy did not cover the injuries caused by Arias and that Farmers had no duty to defend Arias. Because of an apparent ethical conflict, the attorney retained by Farmers to represent Arias withdrew from the case.

On July 2, 1980, Vagnozzi filed a motion for partial summary judgment on the issue of Arias' negligence; the motion was unopposed by Arias. On July 17, 1980, Farmers filed a motion to consolidate the tort case with its declaratory judgment action and also filed a motion for summary judgment in the declaratory judgment action. Before the motions by Farmers were ruled upon, partial summary judgment was granted in the tort claim in favor of Vagnozzi. The court entered an order finding Arias negligent based on the fact that the motion was unopposed by anyone with standing to contest it. The order of partial summary judgment was affirmed on April 24, 1981. *See Farmers Insurance Co. of Arizona v. Vagnozzi*, 132 Ariz. 219, 644 P.2d 1305 (1982).

On November 24, 1980, summary judgment was granted in favor of Farmers in the declaratory judgment action. The judge stated that Arias intended to hit Vagnozzi and therefore the injury was outside coverage of the policy. Vagnozzi appeals from this judgment, claiming that the doctrine of collateral estoppel precludes a finding in the declaratory judgment action that Arias acted intentionally because he was already found negligent in the tort action, and cites *Globe Indemnity Co. v. Blomfield*, 115 Ariz. 5, 562 P.2d 1372 (App.1977).

In *Globe Indemnity Co. v. Blomfield, supra*, the claimant was injured by the insured and obtained a judgment against the insured in the amount of $175,000.00 for compensatory damages. The insurer, Globe Indemnity, defended the insured in the tort suit under a reservation of rights and refused to satisfy the judgment. Blomfield filed a declaratory judgment action and was granted summary judgment in his favor. On appeal, Globe Indemnity argued that it should have been permitted to assert in the declaratory judgment action the insurance policy's provision negating liability for intentional acts. The court disagreed, holding that the insurer was collaterally estopped from asserting the intentional act exclusion because the finding of negligence in the tort suit necessarily included a finding that the act was not intentional. The court summarily dismissed the insurer's contention that the question of intent was never submitted to the jury by mentioning the availability of a determination of that issue before the trial by a separate declaratory judgment action. The court stated that the declaratory judgment action avoids both a conflict of interest between the insured and the insurer under the policy and the professional conflict confronting an attorney retained by an insurer to represent the insured in the tort claim.

*Blomfield* and the case at bar illustrate the interplay and confusion of the doctrine of collateral estoppel and the insurer's duty under the insurance policy to defend an insured. If the insurance company refuses to defend an action under circumstances where it has a duty to defend, it is bound under the doctrine of collateral estoppel by the facts determined in the trial of such action which are essential to the judgment of tort liability. *Hartford Accident and Indemnity Co. v. Villasenor*, 21 Ariz.App. 206, 517 P.2d 1099 (1974). A party will not be precluded from litigating policy coverage in a subsequent proceeding if the question of coverage turns on facts which are nonessential to the judgment of tort liability. *Fuller v. Hartford Accident & Indemnity Co.*, 124 Ariz. 76, 601 P.2d 1360 (App.1979). The

court in *Globe Indemnity Co. v. Blomfield, supra,* held that if the insurer elects to defend the insured, he will also be precluded in a subsequent action from contesting any facts essential to the judgment. These cases tie the operation of the doctrine of collateral estoppel to the insurer's duty to defend the insured.

In *Kepner v. Western Fire Insurance Co.,* 109 Ariz. 329, 509 P.2d 222 (1973), we discussed when the insurer's duty to defend arises. We held that there is no absolute duty to defend an insured when the alleged facts ostensibly bring the case within the policy coverage but other facts which are not reflected in the complaint plainly take the case outside the policy coverage. As one of the bases for this rule, we contemplated the situation where the duty to defend depends upon a factual issue which will not be resolved by the trial of the third party's suit. We then discussed the insurer's course of action where it has reason to believe the policy does not cover the insured.

> Where there are facts which might exclude coverage, the insurer cannot always defend with complete fidelity. There must be a proceeding at which the insurer and the insured are each represented by counsel of their own choice to fight out their differences. Such a testing of the insurer's liability may take the form of a declaratory judgment brought in advance of the third party's action or proceedings on garnishment following the trial of the third party's action as in the instant case. (citations omitted) If the insurer refuses to defend and awaits the determination of its obligation in a subsequent proceeding, it acts at its peril, and if it guesses wrong it must bear the consequences of its breach of contract. (citations omitted).

*Id.* at 332, 509 P.2d at 225.

 Under the doctrine of collateral estoppel, the determination of a litigated fact or law which is essential to a valid and final judgment is conclusive between the parties or their privies in a subsequent claim. Restatement (Second) of Judgments § 27 (1982). Collateral estoppel applied between the insured and insurer is predicated upon an assumed identity of interests of the parties to the contract· of indemnity in opposing the injured person's claim. Having been given the opportunity to appear on behalf of the insured in the tort suit to protect that common interest, the insurer will be bound by that judgment. *Id.* § 57, comment (a), at 78. The purpose of the doctrine is to combine two potential lawsuits—injured v. insured and injured or insured v. insurer—and dispense with the delay and expense of two trials on the same issue. *Farm Bureau Mutual Automobile Insurance Co. v. Hammer,* 177 F.2d 793 (4th Cir.1949). Collateral estoppel also operates to guarantee an insured the protection against lawsuits and legal liability for which he contracted. *Glens Falls Insurance Co. v. American Oil Co.,* 254 Md. 120, 254 A.2d 658 (1969).

A problem arises when investigation by the insurer reveals facts which tend to place the claim outside coverage of the policy, yet the question of coverage depends on facts to be litigated in the tort suit. The insurer's interest in defending the claim while restricting its obligation to the terms of the policy gives rise to a conflict of interest. The insured wants to prove either that he is not liable for the injury or that he was at most negligent, while the insurer wants to prove that the insured, if liable, is guilty of an intentional tort and therefore coverage is excluded under the policy. Under Arizona cases applying the doctrine of collateral estoppel, the insurer will be bound by all facts essential to the judgment whether or not it elects to defend the insured. But, to require the insurer to assume the defense under these circumstances puts both the insurer and the insured in the untenable position of attempting to cooperate in the course of litigation when their interests are in fact adverse.

In *Parsons v. Continental National American Group,* 113 Ariz. 223, 550 P.2d 94 (1976), we held .that when the attorney retained by an insurer to represent an in-

sured obtains information that could be detrimental to the insured's interest under the policy, the attorney should notify the insurer that he can no longer represent its interests. We stated that the attorney who represents an insured owes him undeviating fidelity and that it would be a clear ethical violation for the attorney to subsequently reveal to the insurer for possible use in defense of a garnishment proceeding any information received from the insured. We concluded in that case that the insurance carrier was estopped from denying coverage under its policy in the garnishment action because the defense in that action was based upon confidential information obtained by the carrier's attorney from the insured as a result of representing him in the tort action.

In the present case, Farmers Insurance Company retained an attorney to represent Arias and also filed the declaratory judgment action based upon facts tending to place the tort outside policy coverage. The declaratory judgment action was filed on July 13, 1980 and a motion for summary judgment along with a motion to consolidate the declaratory judgment action with the tort claim were filed on July 17. On August 1, 1980, a motion for summary judgment was granted in the tort claim. What transpired between these dates can be characterized as a "race to the courthouse" where the parties hope to bind each other to facts favorable to one claim. The record reveals that the attorney retained by Farmers was approached by Vagnozzi's attorney regarding a settlement. Vagnozzi's attorney proposed to execute a covenant agreeing not to satisfy any judgment against the personal assets of Arias in exchange for a promise by Arias not to oppose the motion for summary judgment on the issue of liability in the tort claim. An express condition of this proposal was that there would be no disclosure to Farmers. Due to a possible ethical conflict created by the conditions of Vagnozzi's offer, Arias' attorney withdrew from the case. New counsel was substituted, Arias accepted Vagnozzi's offer and did not oppose Vagnozzi's motion for summary judgment on

the issue of Arias' negligence. Vagnozzi now argues that Farmers is bound by the finding of negligence in the tort suit.

We can conceive of no explanation for these tactics other than the desire of Vagnozzi's counsel to maneuver the insurer into a position where it would be obligated to pay the judgment and estopped from raising the defense of noncoverage under the intentional acts exclusion. We find the nonexecution agreement, which was kept secret from Farmers Insurance and from the court, suspect, and we hesitate to condone such sharp practices. But because of our disposition of the merits of this appeal, it is unnecessary to further discuss or consider the agreement.

The facts which establish coverage under the policy for Vagnozzi's injury are identical to and inseparable from those alleged in the tort action. Farmers' attempt to clarify its rights and obligations under the policy by filing a declaratory judgment action was unsuccessful as was its motion to consolidate the tort action with the declaratory judgment action. The result was two conflicting judgments based upon the same facts. *Kepner v. Western Fire Insurance Co., supra,* suggests that an insurer will not be estopped, either before or after the trial on the tort claim, from litigating coverage under a policy, at least where coverage turns on issues not resolved at that trial. *Parsons v. Continental National American Group, supra,* also implies that an insurer can litigate coverage with the caveat that the same attorney should not represent the insurer in that proceeding if he represented the insured in the original tort claim. Without discussing the rationale of these cases, *Globe Indemnity Co. v. Blomfield, supra,* applied the doctrine of collateral estoppel. In applying the doctrine, however, the court relied upon the insurer's failure to file a declaratory judgment action in order to determine coverage. The insurer's actions in *Blomfield,* both in failing to file the declaratory judgment proceeding and the manner in which it conducted the defense, might well warrant the

imposition of an estoppel to prevent a later denial of coverage.

██ However, in the absence of established questions, we think the better rule is to suspend the operation of collateral estoppel where there is an adversity of interests. We hold that where there is a conflict of interest between an insured and his insurer, the parties will not be estopped from litigating in a subsequent proceeding those issues as to which there was a conflict of interest, whether or not the insurer defended in the original tort claim. We incorporate § 58 of the Restatement (Second) of Judgments (1982), wherein it is stated:

(1) When an indemnitor has an obligation to indemnify an indemnitee (such as an insured) against liability to third persons and also to provide the indemnitee with a defense of actions involving claims that might be within the scope of the indemnity obligation, and an action is brought against the indemnitee involving such a claim and the indemnitor is given reasonable notice of the action and an opportunity to assume its defense, a judgment for the injured person has the following effects on the indemnitor in a subsequent action by the indemnitee for indemnification:

(a) The indemnitor is estopped from disputing the existence and extent of the indemnitee's liability to the injured person; and

(b) The indemnitor is precluded from relitigating those issues determined in the action against the indemnitee as to which there was no conflict of interest between the indemnitor and the indemnitee.

(2) A "conflict of interest" for purposes of this Section exists when the injured person's claim against the indemnitee is such that it could be sustained on different grounds, one of which is within the indemnitor's obligation to indemnify and another of which is not.

██ The insurer remains subject to liability for breach of contract if it is later established that the insurer had a duty to defend the insured. *Kepner v. Western*

*Fire Insurance Co., supra.* If the insurer defends the insured pursuant to a contractual duty to defend, the insurer must do so under a properly communicated reservation of rights to later litigate coverage. Restatement (Second) of Judgments § 58 (1982). We emphasize that the attorney who represents the insured owes him an undeviating allegiance whether compensated by the insurer or the insured and cannot act as an agent of the insurance company by supplying information detrimental to the insured. *Parsons v. Continental National American Group, supra.*

██ Having concluded that Farmers was not collaterally estopped from asserting the policy exclusion for intentional acts, we turn now to the question of whether summary judgment was properly granted in the declaratory judgment action. Summary judgment should not be granted where there is a genuine disputed issue of material fact or even the slightest doubt as to the facts. *Granite State Insurance Corp. v. Mountain States Telephone & Telegraph Co.*, 117 Ariz. 432, 573 P.2d 506 (App.1977); 16 A.R.S. Rules of Civil Procedure, rule 56. Upon review, the facts and reasonable inferences therefrom must be viewed in a light most favorable to the party opposing the motion for summary judgment. *Grain Dealers Mutual Insurance Co. v. James*, 118 Ariz. 116, 575 P.2d 315 (1978).

Arias and Vagnozzi were playing basketball on a concrete court on opposing teams in the Maryvale Recreational Basketball League. Each team had three players and fouls were called on an "honor system" without the presence of officials. Both Vagnozzi and Arias engaged in rough play, bodily blocking each other's path to set screens and picks. The accident in question was precipitated when Arias was knocked down by Vagnozzi, allowing the man whom Arias was guarding to momentarily play unguarded. The ball still alive, Arias sprang up, angry, swung his left elbow toward Vagnozzi's chest, and lunged toward the man with the ball. At that instant, Vagnozzi bent over and Arias' el-

bow struck him in the face. Vagnozzi was knocked over backward by the blow, hit the back of his head on the concrete and was rendered unconscious.

Both parties agree to this statement of facts. Vagnozzi characterizes the facts as the rough and tumble events of an unstructured basketball game and quotes language from the deposition to demonstrate that although Arias intended to hit Vagnozzi, he did not intend the resulting bodily injury. Farmers depicts the blow to Vagnozzi as an intentional, retaliatory act committed by a furious Arias. Farmers argues that the injury to Vagnozzi was the natural and probable consequence of Arias' intentional act and therefore coverage for the injury is excluded under the insurance policy.

Arias' liability insurance policy with Farmers defines "accident" as "a sudden event ... resulting in bodily injury or property damage neither expected nor intended by the insured" and excludes from coverage bodily injury or property damage "arising as a result of intentional acts of the insured." Arias admits that he intended to strike a blow to Vagnozzi; it is unclear from the facts whether Arias intended to injure him. The issue is whether the exclusion for intentional acts by the insured operates to relieve Farmers of its obligation under the policy.

The trial court found that the result of the blow was different in character and magnitude from that intended but was nonetheless the natural and probable consequence of the intentional act. The court found that Arias' act falls within the exception enunciated in *Steinmetz v. National American Insurance Co.*, 121 Ariz. 268, 589 P.2d 911 (App.1978), for acts which are certain to result in a particular harm. We do not agree and find that summary judgment was improperly granted.

The presumption that a person intends the ordinary consequences of his voluntary actions, used in determining responsibility for the consequences of voluntary acts, has no application to the interpretation of terms used in insurance contracts.

*Vanguard Insurance Co. v. Cantrell*, 18 Ariz.App. 486, 503 P.2d 962 (1972). The intentional acts provision excludes policy coverage if the insured acts with the intent or expectation that bodily injury will result even though the result is different in character from the injury that was intended. *Id.* Thus, the trier of fact must inquire into the actor's subjective intent. An act may be so certain to cause a particular injury that the intent to cause the harm is inferred as a matter of law and the subjectve intent of the actor is immaterial. *Steinmetz, supra.* For example, punching someone in the face with a fist was so certain to result in injury that the insured was not permitted to maintain he had no subjective intent to injure. *Id.; Clark v. Allstate Insurance Co.*, 22 Ariz.App. 601, 529 P.2d 1195 (1975). However, firing a shot at a liquor store clerk, merely to frighten him while escaping from the area, was not an act which was so certain to result in the particular harm that the court could not entertain the insured's contention that he did not intend to harm the clerk. *Vanguard Insurance Co. v. Cantrell, supra.* We do not find Arias' act was one so certain to cause the injury that the court cannot examine Arias' intent. The act which causes the injury cannot be viewed in isolation; the trial court must examine the transaction as a whole.

The facts in this case are undisputed, but from those undisputed facts different inferences can be drawn. The two men were engaged in an athletic event and the ball was still in play when the injury occurred. Although technically a non-contact sport, both men were playing a very physical game. The players had been fouling one another throughout the game and none of the previous fouls had been called. Arias stated in his deposition that he intended to hit Vagnozzi but also stated he did so in order to knock Vagnozzi out of the way and pursue the ball. The policy definition of "accident" as an event resulting in injury either expected or intended by the insured makes the subjective intent of the insured a question of fact to be determined

**450**

after listening to the testimony. The two interpretations which can be drawn from Arias' testimony create enough question as to his intent that the *Steinmetz* exception does not apply. For purposes of determining that a resulting injury was so certain to occur that the actor intended the harm as a matter of law, we find that intentionally throwing an elbow in an attempt to get the ball during a heated basketball game is distinguishable from deliberately punching a person in the face. Whether the injury was the intended result of Arias' act or whether the act constituted negligent or grossly reckless conduct is a matter upon which reasonable minds can differ.

The trial court erred in granting summary judgment in favor of Farmers on the issue of Arias' intent. The judgment is reversed and the case is remanded for trial.

HOLOHAN, C.J., GORDON, V.C.J., and CAMERON and FELDMAN, JJ., concur.