**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| YOLANDA E. QUIHUIS and ROBERT QUIHUIS, a married couple,<br>*Plaintiffs-Appellants*,<br><br>v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a foreign corporation,<br>*Defendant-Appellee*. | No. 11-18067<br><br>D.C. No.<br>4:10-cv-00376-RCC<br><br><br>ORDER CERTIFYING QUESTION TO THE ARIZONA SUPREME COURT |

Filed April 4, 2014

Before: Richard C. Tallman and Sandra S. Ikuta, Circuit Judges, and Andrew P. Gordon, District Judge.[*]

Order

---

[*] The Honorable Andrew P. Gordon, District Judge for the U.S. District Court for the District of Nevada, sitting by designation.

## SUMMARY[**]

### Certification to Arizona Supreme Court

The panel certified the following question to the Arizona Supreme Court:

> Whether a default judgment against insured-defendants that was entered pursuant to a *Damron* agreement that stipulated facts determinative of both liability and coverage has (1) collateral estoppel effect and precludes litigation of that issue in a subsequent coverage action against the insurer, as held in *Associated Aviation Underwriters v. Wood*, 98 P.3d 572 (Ariz. Ct. App. 2004), or (2) no preclusive or binding effect, as suggested in *United Servs. Automobile Ass'n v. Morris*, 741 P.2d 246 (Ariz. 1987).

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## ORDER

We respectfully request that the Supreme Court of Arizona exercise its discretion to decide the certified question set forth in Part II of this order.

## I.  COUNSEL

Pursuant to Arizona Supreme Court Rule 27(a)(3)(C), the names and addresses of the counsel appearing in the matter are:

For Plaintiffs-Appellants:

>Jeffrey A. Imig
>Haralsan, Miller, Pitt, Feldmen & McAnally, PLC
>One South Church Ave., Suite 900
>Tucson, AZ 85701
>Tel.: 520-792-3836

For Defendant-Appellee:

>David M. Bell, Howard L. Andari
>David M. Bell & Associates, PLLC
>1850 E. Thunderbird Rd.
>Phoenix, AZ 85022
>Tel.: 602-354-0050

## II.  QUESTION CERTIFIED

Pursuant to Arizona Supreme Court Rule 27, a panel of the United States Court of Appeals for the Ninth Circuit, before which this appeal is pending, requests that the Supreme Court of Arizona answer the question presented

below. This court will accept the Arizona Supreme Court's decision on this question. Our phrasing of the question is not intended to restrict the Arizona Supreme Court's consideration of the case or formulation of the question. *See Broad v. Mannesmann Anlagenbau AG*, 196 F.3d 1075, 1076 (9th Cir. 1999). The question certified is as follows:

> Whether a default judgment against insured-defendants that was entered pursuant to a *Damron*[1] agreement that stipulated facts determinative of both liability and coverage has (1) collateral estoppel effect and precludes litigation of that issue in a subsequent coverage action against the insurer, as held in *Associated Aviation Underwriters v. Wood*, 98 P.3d 572 (Ariz. Ct. App. 2004), or (2) no preclusive or binding effect, as suggested in *United Services Automobile Association v. Morris*, 741 P.2d 246 (Ariz. 1987).

---

[1] A *Damron* agreement refers to a settlement agreement between an insured and an injured party in circumstances where the insurer has declined to defend a suit against the insured. In such an agreement, the insured agrees to liability for the underlying incident and assigns all rights against the insurance company to the injured party. The injured party, in turn, agrees to relieve the insured of all liability and recover only against the insurance company. *See Damron v. Sledge*, 460 P.2d 997 (Ariz. 1969). When the insurer defends a suit against the insured under a reservation of right, such agreements are sometimes referred to as *Morris* agreements. *See United Servs. Auto. Ass'n v. Morris*, 741 P.2d 246, 252 (Ariz. 1987). For simplicity, we will refer to any agreement of this sort as a *Damron* agreement.

## III.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Norma Bojorquez ("Norma") and Carol Cox ("Carol") were coworkers in Nogales, Arizona. Norma sought a car for her daughter, Iliana Bojorquez ("Iliana"), and expressed interest in Carol's 1994 Jeep Cherokee (the "Jeep"). By January 9, 2008, Carol and Norma had executed a written sales agreement for the Jeep which called for eight monthly installments totaling $3,000. Carol gave Norma the only set of keys to the Jeep, and Norma drove the car home. Norma gave the keys to Iliana so that Iliana could drive the Jeep at her pleasure. Carol did not transfer the Jeep's title certificate to Norma because she thought it necessary to retain the title certificate as collateral until Norma paid off the Jeep. The Coxes never retook possession of the Jeep.

The Coxes maintained insurance coverage on the Jeep through a policy with State Farm (the "Policy"). The Policy provided liability coverage for bodily injury caused by accident resulting from the use of cars owned by the Coxes, including the Jeep. The Policy covered the Coxes and permissive users of their cars if the use was within the scope of their consent. The Policy also imposed a duty to defend on State Farm. The Coxes did not cancel the policy until January 29, 2008.

On January 22, 2008, Iliana was driving the Jeep when it collided with a car driven by Yolanda Quihuis. In Arizona state court, Yolanda Quihuis and her husband, Robert Quihuis, sued Iliana for negligence and the Coxes for negligent entrustment. The negligent entrustment claim relied on the Coxes' alleged ownership of the Jeep at the time

of the accident.**[2]**   State Farm refused to defend the Coxes because the Jeep's ownership had transferred to Norma before the accident.

On October 29, 2009, the Coxes, the Bojorquezes, the Quihuises, and Dairyland Insurance entered into a *Damron* agreement entitled "Assignment of Rights, Agreement Not to Execute."**[3]**   In pertinent part, they stipulated that the Coxes owned the Jeep at the time of the accident, that Iliana was incompetent to drive a motor vehicle and her negligence caused the accident, and that the Coxes should have known that Iliana was incompetent to drive and therefore should not have entrusted the Jeep to her.  The Coxes and Bojorquezes agreed to damages in the amount of $275,000.  The Coxes assigned their rights under the Policy to the Quihuises, who agreed not to execute upon a judgment against the Coxes or the Bojorquezes.  The parties also agreed to request a default judgment to terminate the case.  On December 31, 2009, the state court entered default judgment in the amount of $350,000—$325,000 for Yolanda's injuries and $25,000 for Robert Quihuis' loss of consortium.**[4]**

---

**[2]** Under Arizona law, "where one who owns a dangerous instrumentality, such as an automobile, and loans it to another who, to the knowledge of the owner, is incompetent to drive such a vehicle, the owner is guilty of negligen[t] [entrustment] if the driver negligently injures another." *Powell v. Langford*, 119 P.2d 230, 232 (Ariz. 1941).

**[3]** Dairyland Insurance was a party to the *Damron* agreement, as Dairyland provided coverage for Iliana's injuries through a policy with Iliana's parents.  Dairyland is not a party to this case, however.

**[4]** The discrepancy between the $275,000 in the *Damron* agreement and the $350,000 judgment amount is unexplained but irrelevant for this appeal.

The Quihuises, standing in the Coxes' shoes, then brought a declaratory judgment action against State Farm in Arizona state court for indemnification and failure to defend. State Farm removed the case to the United States District Court for the District of Arizona.

In November 2011, the district court granted State Farm's motion for summary judgment. Applying Arizona law, the district court held that the default judgment did not preclude State Farm from litigating the question of whether the Coxes owned the Jeep at the time of the accident for two reasons. First, a conflict of interest existed between the Coxes and State Farm, which denied preclusive effect to the issues in the default judgment. Specifically, the court held it was in State Farm's interest to prove that the Bojorquezes owned the Jeep at the time of the accident, while the Coxes were best served to admit ownership in order to obtain an agreement from the Bojorquezes not to execute any judgment against them. Second, the court held that only issues determinative of liability and damages are preclusive in this context; issues relating to coverage are open for relitigation. Consequently, State Farm could litigate the question of coverage, and the court held that the undisputed facts established that the Bojorquezes owned the Jeep at the time of the accident as a matter of law.

The Quihuises timely appealed, contending there was no conflict of interest between the Coxes and State Farm, and that Arizona case law establishes that an insurer may not litigate an issue determinative of coverage if that issue is also determinative of liability and was stipulated to as part of a *Damron* agreement that resulted in entry of a default judgment. They also contended that ownership of the Jeep was a genuine issue of material fact.

Because we agree with the district court that the undisputed facts establish the Coxes were not the owners of the Jeep at the time of the accident, the outcome of this appeal depends on the scope of the default judgment's preclusive effect. More specifically, the issue is whether the stipulation (and the subsequent default judgment) between the Coxes and Bojorquezes that the Coxes owned the Jeep prevents State Farm from contesting coverage under the Policy on the basis that the Coxes did not own the Jeep. We disagree with the Quihuises that Arizona case law conclusively decides the preclusion issue.

## IV.    EXPLANATION OF OUR REQUEST

Arizona cases are unclear on the answer to the specific question at issue here, namely whether an insurer who declines to defend its insured can be estopped from raising a coverage defense in a subsequent action based on a default judgment entered pursuant to a *Damron* agreement that included a stipulation between the third-party plaintiffs and the insured. Basic principles of collateral estoppel, *see Chaney Bldg. Co. v. City of Tucson*, 716 P.2d 28, 30 (Ariz. 1986), and the principles of indemnity law set forth by the Arizona Supreme Court in *Morris*, 741 P.2d at 253, indicate that an insurer may generally raise a coverage defense notwithstanding the stipulation. On the other hand, the collateral estoppel principles adopted by the Arizona Court of Appeals in *Wood*, indicate that an insurer is estopped from raising a coverage defense where "the 'coverage' issues [the insurer] seeks to litigate hinge on facts and law bearing directly on the insureds' liability, and those issues were completely subsumed in the consent judgment [albeit not actually litigated or determined by a trier of fact] in the underlying tort actions." 98 P.3d at 585.

In *Morris*, the Arizona Supreme Court analyzed the preclusive effect of a settlement between an insured and a tort plaintiff. 741 P.2d at 253. The plaintiff was a burglar who had been shot by an occupant of a home he was burglarizing. *Id.* at 248. The burglar pleaded two theories of liability: negligence and intentional tort. *Id.* at 253. The homeowner's insurance policy covered negligent, but not intentional, acts. *Id.* at 248. Before trial, the homeowner entered a settlement agreement with the burglar, in which they stipulated that the shooter's actions "were *either* negligent or intentional." *Id.* at 253. The insurance company then sought to litigate the issue of whether the harm was intentional and thus outside of its duty to indemnify. *Id.* at 253–54. The Arizona Supreme Court stated that the insurance company could litigate this issue because the settlement stipulation left the coverage issue "clearly unresolved." *Id.* at 253. *Morris* then stated that:

> [The burglar] presumably did not demand that [the defendants] stipulate that their acts were negligent and thus covered because he knew that any stipulation of facts essential to establishing coverage would be worthless. *See* [*Farmers Ins. Co. of Ariz. v. Vagnozzi*, 675 P.2d 703, 708 (Ariz. 1983)] (insurers are not even bound by *litigated* issues as to which there was a conflict of interest). . . . An insured's settlement agreement should not be used to obtain coverage that the insured did not purchase.

*Id.*

This statement indicates that the Arizona Supreme Court has adopted the principle of insurance and indemnity law that an insurer cannot be bound by "any stipulation of facts essential to establishing coverage." *Id.* In enunciating this rule, *Morris* relied on a leading treatise of insurance law. *See id.* (citing 7C Appleman, *Insurance Law and Practice* § 4690, at 235 (1979)). The section of Appleman cited by the Arizona Supreme Court observed that "[a]lthough the insured can make such settlements as his interests require, such a settlement is not conclusive upon the insurer which still has a right to be heard on the question of policy coverage or the possibility of fraud." Appleman, *supra*, § 4690, at 235. *Morris* noted the inherent conflict of interest in *Damron* agreements: "[t]o relieve himself of personal exposure, the insured may be persuaded to enter into almost any type of agreement or stipulation by which the claimant hopes to bind the insurer by judgment and findings of fact." *Morris*, 741 P.2d at 252–53. Accordingly, *Morris* concluded that "any stipulation of facts essential to establishing coverage would be worthless." *Id.* at 253. Because the parties in *Morris* did not stipulate whether the insured's acts were negligent or intentional, however, this statement might be considered dicta. Nevertheless, *Morris* recited a basic tenet of indemnity law: an insured cannot manufacture coverage by making admissions in a settlement agreement, given the conflict between the insured and insurer that arises once the insurer refuses to defend. 741 P.2d at 251, 253. To hold otherwise would allow an insured "to obtain coverage that the insured did not purchase." *Id.* at 253.

*Morris* did not cast doubt on principles of collateral estoppel, which may preclude an insurer who refuses to defend a suit tendered by an insured from contesting issues that were actually litigated in the underlying action.

Restatement (Second) of Judgments § 58, adopted by the Arizona Supreme Court in *Vagnozzi*, provides that when an insured is sued by an injured party, "a judgment for the injured person" estops an indemnitor who had notice and an opportunity to assume the defense of the claim from "disputing the existence and extent of the indemnitee's liability to the injured person" and "from relitigating those issues determined in the action against the indemnitee as to which there was no conflict of interest between the indemnitor and the indemnitee." 675 P.2d at 708. A conflict "exists when the injured person's claim against the [insured] is such that it could be sustained on different grounds, one of which is within the [insurer's] obligation to indemnify and another of which is not." *Id.*

These principles are consistent with Arizona's collateral estoppel principles. As explained by the court in *Chaney*, "[u]nder the doctrine of *res judicata*, a judgment 'on the merits' in a prior suit involving the same parties or their privies bars a second suit based on the same cause of action," while "[c]ollateral estoppel or issue preclusion is applicable when the issue or fact to be litigated was actually litigated in a previous suit, a final judgment was entered, and the party against whom the doctrine is to be invoked had a full opportunity to litigate the matter and actually did litigate it, provided such issue or fact was essential to the prior judgment." 716 P.2d at 30. Thus, where the underlying suit is litigated to judgment, the insurer can be bound by those factual determinations because of its privity with the insured. *See Vagnozzi*, 675 P.2d at 706. However, "in the case of a judgment entered by confession, consent or default, none of the issues is actually litigated," and collateral estoppel does not apply. *Chaney*, 716 P.2d at 30.

The Arizona Court of Appeals' holding in *Wood* can be read to either fill a gap left unresolved by the Arizona Supreme Court in *Morris* or to conflict with *Morris*'s admonition that settlement agreements should not be used to manufacture coverage that the insured did not purchase, *Morris*, 741 P.2d at 253, and *Chaney*'s principle that default judgments are not accorded collateral estoppel effect, 716 P.2d at 30. In *Wood*, the Arizona Court of Appeals applied the collateral estoppel rule enunciated in *Vagnozzi* to the settlement agreement context. *Wood* involved a mass-tort litigation in which a number of plaintiffs sued the City of Tucson and its Airport Authority for environmental harms. 98 P.3d at 578–79. The City eventually entered into a *Damron* agreement with plaintiffs. *Id.* at 579. In the agreement, the City stipulated that it was liable for $35 million in damages for contamination in the groundwater, and stipulated as to the facts necessary to establish its tort liability. Those facts were also determinative of coverage. In exchange, the plaintiffs agreed not to execute on the City and to pursue the insurance company instead. *Id.* The insurance companies argued in a separate declaratory judgment action that under principles of insurance and indemnity law, the facts contained in the stipulation were not binding on them as to coverage. *Id.* at 580, 581–82.

*Wood* rejected that argument and invoked collateral estoppel to preclude the insurers from relitigating facts necessary to both liability and coverage. *Id.* at 584–85. In so doing, the Arizona Court of Appeals relied on *Vagnozzi* and principles of collateral estoppel, even though the factual stipulations in the *Damron* agreement were not "actually litigated" as that term is used in the collateral estoppel context. *Wood* understood *Morris* to permit the "suspension" of the "'actually litigated' element of collateral estoppel."

*Wood*, 98 P.3d at 589.  *Wood* concluded that even though stipulations in a settlement are not "actually litigated" as required by Arizona collateral estoppel principles, in the unique context of *Damron* agreements, a consent judgment's implicit adoption of stipulations in a settlement between an insured and a plaintiff collaterally estops the insurer from contesting coverage where the facts essential to liability and coverage overlap.  *Id.* at 585, 588–89.

Although *Morris* recognized the conflict of interest inherent in *Damron* agreements, 741 P.2d at 252–53, *Wood* held that the only conflict of interest that defeats the application of collateral estoppel in this context is where "the injured person's claim against the [insured] is such that it could be sustained on different grounds, one of which is within the [insurer's] obligation to indemnify and another of which is not," 98 P.3d at 586 (quoting Restatement (Second) of Judgments § 58(2)).  Absent this specific conflict, collateral estoppel will apply and prevent the insurer from litigating any factual issue that would have been essential to liability in the underlying case, even if that issue is also essential to coverage.  *Wood*, 98 P.3d at 585.

*Wood*'s ruling on the collateral estoppel effect of stipulated admissions appears to conflict with the statement in *Morris* that "any stipulation of facts essential to establishing coverage would be worthless" and "[a]n insured's settlement agreement should not be used to obtain coverage that the insured did not purchase." 741 P.2d at 253. Recognizing this inconsistency, *Wood* distinguished scenarios in which "the unresolved coverage issue . . . [is] related to the nature or characterization of the insureds' conduct and not to other issues of fault, causation or damages," from those where litigating coverage inherently requires the relitigation

of issues necessary to liability. *Wood*, 98 P.3d at 584–85. Thus, where coverage issues "hinge on facts and law bearing directly on the insureds' liability, and those issues were completely subsumed in the consent judgment," those issues have preclusive effect. *Id.* at 585.

Our dilemma here is that the outcome of the case before us depends on whether we follow *Morris*'s statements regarding *Damron* agreements and general principles of collateral estoppel, or instead look to *Wood*'s more narrow holding. On the one hand, *Morris* observed that an insured's stipulations in a settlement agreement regarding facts essential to coverage should not bind insurance companies. 741 P.2d at 253. If we follow *Morris*, State Farm would not be bound by the stipulation that the Coxes owned the Jeep at the time of the accident, and the Jeep's ownership could be litigated.

*Wood*, on the other hand, appears to accord collateral estoppel effect to the stipulation in the *Damron* agreement—that the Coxes owned the Jeep at the time of the accident—even though that issue was never litigated. The issue of the Jeep's ownership was an essential element of both the Quihuises' negligent entrustment claim against the Coxes and the question of coverage. Because the Quihuises claimed only that the Coxes were negligent, and did not advance a claim of intentional wrongdoing, the Coxes did not have a conflict of interest with their insurer of the type set forth in *Vagnozzi* and the Restatement § 58(2). Therefore, if we were to apply *Wood*, we would have to conclude that State Farm is bound by the stipulation that the Coxes owned the Jeep.

We are unsure whether *Wood* should be interpreted narrowly and confined to its facts in light of *Morris* and general Arizona collateral estoppel law, or whether it established a rule of general applicability for situations where there is overlap of factual issues determinative of *both* liability and coverage. We are unaware of any statutes or cases that resolve this tension between *Morris* and *Wood.* Based on the uncertainty of Arizona law in this area, we believe it is appropriate to defer to the Arizona Supreme Court on this important issue of state law: whether a default judgment entered pursuant to a settlement agreement that included the stipulation of a factual issue that is determinative of both liability and coverage in a tort liability action has a collateral estoppel effect, precluding litigation of that issue in a subsequent coverage action. Ariz. Rev. Stat. § 12-1861.

This legal issue is "determinative of the cause" in this appeal because State Farm's ability to assert transfer of ownership as a coverage defense depends on whether the factual issue of the Jeep's ownership may be litigated. *Id.* If State Farm is precluded from asserting that the Bojorquezes owned the car at the time of the accident, the Quihuises will win their appeal because State Farm did not raise any other coverage defenses before the trial court. *See Kimes v. Stone*, 84 F.3d 1121, 1126 (9th Cir. 1996) (with narrow exceptions, new issues may not be raised on appeal). If the default judgment is *not* preclusive as to the Jeep's ownership, State Farm will prevail because the district court correctly determined both that there is no genuine dispute of fact as to the Jeep's ownership at the time of the accident and that the Coxes owned the Jeep as a matter of law. Fed. R. Civ. P. 56(a).

If clarified definitively by the Arizona Supreme Court, the answer to this unsettled question of law presented by the Quihuises' appeal will have far-reaching effects on automobile insurers and policyholders in Arizona. We are reluctant to create uncertainty in this area of state law by answering this question ourselves in the first instance.

## V.  ACCOMPANYING MATERIALS

If the Arizona Supreme Court accepts review of the certified question, the Quihuises and State Farm may file briefs in accord with Arizona Supreme Court Rule 27(d).

The Clerk of Court is hereby ordered to transmit forthwith to the Arizona Supreme Court, under official seal of the United States Court of Appeals for the Ninth Circuit, a copy of this order and all briefs and excerpts of record pursuant to Arizona Revised Statute § 12-1861 and Arizona Supreme Court Rule 27(a).

Further proceedings in this court are stayed pending the Arizona Supreme Court's decision whether it will accept review and, if so, receipt of the answer to the certified question. The case is withdrawn from submission until further order from this court. The panel will resume control and jurisdiction upon receipt of an answer to the certified question or upon the Arizona Supreme Court's decision to decline to answer the certified question. When the Arizona Supreme Court decides whether or not to accept the certified question, the parties shall file a joint status report informing this court of the decision. If the Arizona Supreme Court

accepts the certified question, the parties shall file a joint status report informing this court when the Arizona Supreme Court issues its answer.

It is so **ORDERED**.